<i>New-Haven,</i><br>July,<br>1826.<br><br>Chance<br><i>v.</i><br>Hine.

The other Judges were of the same opinion, except DAGGETT, J., who had been of counsel in the cause, and therefore gave no opinion.

New trial not to be granted.

—◦◦◦—

CATLIN *against* THE EAGLE BANK OF NEW-HAVEN and others.

The mere insolvency of a bank, incorporated with the usual powers of such an institution, does not convert its effects into a trust fund for its creditors.

Therefore, where the *Eagle Bank* of *New-Haven* became insolvent, and the directors afterwards mortgaged its real estate, assigned sundry promissory notes and paid a sum of money to the *Savings Bank* in security and payment of a debt due from the former to the latter institution, for monies deposited; it was held, on a bill in chancery, brought by another creditor of the *Eagle Bank*, to have these conveyances set aside, and all the funds of the bank distributed rateably among its creditors, that such bill could not be sustained.

This was a bill in chancery.

The *Eagle Bank* is a corporation, established, by an act of the legislature, in *October*, 1811, for banking purposes, with the usual powers of such an institution; the charter being, at all times, subject to alteration, amendment or revocation, by the General Assembly. (*a*) The plaintiff is a creditor of this corporation to the amount of between 90,000 and 100,000 dollars. The bank, on the 15th *September*, 1825, failed, and was in fact insolvent. Among its creditors was *The Savings Bank of New-Haven*, a corporation, empowered to receive deposits from individuals, for safe-keeping and management, and obliged to pay the depositors the interest or profits that should accrue. This institution had deposited with the *Eagle Bank*, at an interest of four *per cent.* and to be returned on demand, all the money, which it had received, in small sums, from a great multitude of depositors, amounting to between 80,000 and 90,000 dollars.

(*a*) See the charter in the printed *Statutes*, previous to the revision of 1821, *book* 2, *page* 65.

In payment and security of this demand, the directors of the *Eagle Bank*, after its actual insolvency, mortgaged to the *Savings Bank* real estate worth about 20,000 dollars paid to *Samuel J. Hitchcock*, Esq. secretary of the *Savings Bank*, about 15,000 dollars in money, and assigned to him sundry negotiable promissory notes, to the amount of about 52,000 dollars. The bill prayed, that these conveyances might be set aside, and that all the funds of the *Eagle Bank*, at the time of its failure, might be equitably distributed among its creditors, in proportion to their respective claims.

The case was reserved for the advice of this Court.

*Sherman* and *R. S. Baldwin*, for the plaintiff. A corporation is a mere creature of the law, created for the accomplishment of the objects specified in its charter, and having no powers, except such as are expressly granted, or are incidental to its very existence. 4 *Wheat.* 636. The general powers conferred on its agents or directors, by whom alone it can act, are to be expounded in reference to the purposes, for which the corporation was established. Their duties are " to act up to the end or design for which it was created." 1 *Bla. Comm.* 480. While the corporation remains solvent,—the only condition in which it is contemplated by the law which creates it,—its directors are general agents for the transaction of all business, which it is authorized by its charter to pursue ; and, as trustees of the stockholders, or members of the corporation, they may be restrained in equity, from any abuse of their powers. *The Attorney-General* v. *The Utica Insurance Company*, 2 *Johns. Chan. Rep.* 371. 389. *The King* v. *Watson* & al. 2 *Term Rep.* 199. 204. *Adley* v. *The Whitstable Company*, 17 *Ves.* jun. 316. 324.

When a corporation becomes insolvent, a new state of things commences, unforseen and unprovided for, by the charter of its creation ; and a new rule for the government of its agents, necessarily comes into existence, by operation of law. Their duties are wholly changed. The corporation is rendered, by its insolvency, incapable of pursuing the objects for which it was created, without defrauding the public and its existing creditors. The continued exercise of the corporate franchise, in the ordinary manner, after insolvency, would be restrained, as an abuse of the powers and privileges conferred by its charter. What, then, are the duties of the corporation and its agents in regard

to the property remaining under their controul; and in what manner is it to be applied? There can be no other rule, in the absence of positive law, but to dispose of it according to the principles of natural justice and equity. 1 *Fonbl. Eq.* 6. *n.* 9. *Mitf.* 2. 4.

The agents of the corporation, by whom alone it can act, are trustees of the property under their controul: they have the management of property, *not their own,* to be disposed of, in a lawful manner, for the *benefit* of *others.* The *legal* ownership of the property, after the insolvency, as well as before, is in the corporation. While the corporation is free from debt, the entire *beneficial* interest in its funds, belongs to the persons who are represented by the corporate name, or in other words, to the stockholders; and the courts will, as Chief Justice *Marshall* remarks, (5 *Cranch* 90—1.) for legitimate purposes, look through the technical definition of a corporation, as a mere legal existence, and "contemplate it more substantially" in the persons whose interests it represents. The corporation and its directors, would, in the case supposed, be trustees for the stockholders.

But after the insolvency of the corporation, although the legal ownership of the property remaining, continues as before, the *beneficial* interest of the *stockholders* no longer exists. A state of insolvency presupposes, that the capital is gone. The stockholders, having incurred no personal liability for the debts of the corporation, have no interest in the disposal of the corporate funds. If they were to divide them among themselves, they would be responsible in chancery to the creditors. *Vose* v. *Grant,* 15 *Mass. Rep.* 505. 522. The corporate property is the only fund, to which creditors can resort for the payment of their debts. "It is pledged" says Chief Justice *Parker,* in *Foster* & al. v. *The Essex Bank,* 16 *Mass. Rep.* 272., "for the payment of the corporate debts." It follows, therefore, that the agents of the corporation, who have the disposal of its funds, must be trustees for the creditors. If it were otherwise, the creditors, when tangible property could not be found, would have no remedy at all for the recovery of their debts. A judgment at law against the corporation, would, of course, be fruitless. If the agents should refuse to apply the property, in payment of the debts, or to collect the notes due to the corporation, or should squander or embezzle the funds, or divide them among the stockholders, the creditors would have no remedy,

unless the agents are holden to be *trustees* for their benefit.  In each of these cases, chancery would interfere, at the suit of a creditor, on the ground of a trust. *Vose* v. *Grant*, 15 *Mass. Rep.* 522. *Foster* & al. v. *The Essex Bank*, 16 *Mass. Rep.* 272. *Adley* v. *The Whitstable Company*, 17 *Ves.* jun. 324. 1 *Swift's Dig.* 72.  In the case of *Williams* v. *The Derby Fishing Co.* (an insolvent corporation) and the directors individually, in the superior court, *New-Haven* county, *August* term, 1822, *Peters*, J. sustained a bill to compel the directors to collect the stocknotes for the benefit of a creditor   In Dr. *Salmon's* case, 1 *Ca. Ch.* 204., the same principle was established, by the house of lords, on appeal from the chancellor.   These cases must proceed on the ground of a trust for the creditors ; otherwise, chancery could have no jurisdiction.

The condition of an individual debtor is wholly different from that of the agents of a corporation.   His property is his own. He is not the trustee of it for his creditors.   He may spend or squander it, as he pleases ;  or he may withhold it entirely from his creditors ; and chancery cannot interpose to restrain him, or to call forth his resources. *Donovan* v. *Finn*, & al.  1 *Hopk. Ch. Rep.* 59.   He has all power over his property, unless restrained by law, and, unlike the members of a corporation, he remains personally liable to his creditors, though his property is gone.

If it has been shewn, that on the happening of an insolvency, the corporation and its agents become trustees for its creditors, it follows, that every creditor, at the time of the insolvency, must have an interest in the trust fund, in proportion to the amount of his debt.   Where the law has given no preference, every debt is of equal obligation, on the principles of natural justice, and no distinction is admitted between honorary or confidential debts and any legal demand. *Riggs* & al. v. *Murray* & al. 2 *Johns. Ch. Rep.* 565. 577.   Each creditor must, therefore, be a *cestuy que trust* of the property in the hands of the agents of the corporation ;  and, of course, has an interest, which chancery will protect, and of which the trustees cannot, by their voluntary act, deprive him, by giving the whole to another, having notice of the trust. 2 *Fonbl. Eq.* 166.

It is a doctrine of universal application in chancery, wherever there is a trust fund over which it has jurisdiction, that all are to be paid *pari passu*, unless the law has prescribed a different rule. *Riggs* & al. v. *Murray* & al. 2 *Johns. Ch. Rep.* 565. 577.

*Thompson* & al. v. *Brown* & al. 4 *Johns. Ch. Rep.* 619. 643.
*Anon* 2 *Cas. Ch.* 54. *Benson* & al. v. *Le Roy* & al. 4 *Johns. Chan. Rep.* 651. 654. 657, 8.

*New-Haven,*
July,
1826.

Catlin
*v.*
Eagle Bank,

The preferences, which executors, in *England*, are allowed to make, between creditors of the same class, result from the rule of law, that the creditor who first obtains judgment against the executor, acquires for himself a legal preference, and the executor, until restrained by a decree in chancery, is permitted to do voluntarily what he might be compelled to do by suit. But a judgment creditor against a corporation stands on no higher ground in regard to a preference, than any other creditor.

The cases of devises to executors and others in trust to pay debts, or of land *charged* with payment of debts, where the assets are deemed equitable, and preferences disallowed, are in principle, analogous to the present case. *Thompson* & al. v. *Brown* & al. 4 *Johns. Ch. Rep.* 642. 654. and the cases there cited.

The case of an heir, who is liable *as heir*, on the bond of his ancestor, affords a striking illustration of the principles for which we contend. An executor is only liable in regard to the assets, and is charged only in the *detinet*. But the *heir* is himself a *debtor*. He is bound as well as his ancestor, and is sued in the *debet* as well as in the *detinet*. As he is permitted to plead "nothing by descent," or "only so much," chancery, if there are not assets to pay all the bond creditors, will cause them to be rateably divided, and enjoin a creditor who is seeking a legal preference, on the ground of an implied trust for the benefit of all. *Martin* v. *Martin*, 1 *Vesey* 212.

Although the directors of the *Eagle Bank* were trustees for the creditors, it is admitted, that they had the the power of disposing of the property for the fulfilment of their trust; and such disposition, or even payments, if fairly made, without notice to the receiver, of the existence of the trust, or of the insolvency which created it, would be valid, and could not be disturbed by a court of chancery. But these defendants had notice of the insolvency, and admit it in their answer. Their object was to obtain a preference over other creditors. They received the property assigned, therefore, subject to all the equities which bound it, in the hands of the directors.

The rule which admits the legality of preferences, by an individual debtor in failing circumstances, has been regretted, by some of the most eminent jurists in our country; and Chancellor

*Kent*, in *Riggs* & al. v. *Murray* & al. 2 *Johns. Ch. Rep.* 577. expressed his opinion, that it would not have been endured in *England*, had not their bankrupt laws embraced most of the cases in which its operation would be felt. It is a power, which, if extended to the directors of an insolvent corporation, will be much more dangerous in its consequences, than when exercised by individuals. If preferences are allowed at all, the directors may always prefer themselves; and, if the creditors have no vested equitable interest in the fund, may purchase the notes of the corporation at a discount, in the market, and pay themselves in full from the corporate property.

*N. Smith* and *Hitchcock*, for the defendants, admitting that a trust fund in the hands of a trustee must be applied to the uses of the trust, and that chancery will cause the trust to be executed accordingly, contended, That the effects of this corporation were not a trust fund in the hands of the directors, as trustees, for the benefit of the creditors.

That the relations subsisting between a bank and its creditors, are ordinarily the same as between an individual and his creditors, is not denied. The law recognizes such an institution as an *artificial person*. Under the provisions of its charter, it holds its property as a natural person does. It may contract debts, and apply funds in payment or security of such debts. Its property may be attached, and taken by execution, like the property of an individual. And the course of modern decisions has been, to assimilate it more closely. than formerly, to a natural person, by subjecting it on an *implied* engagement. What, then, is there, in this case, to put this corporation and its funds under the controul of a different law from that which governs other corporations of a similar nature ? There is but a single fact relied on, for the purpose; and that is, the *insolvency* of the bank.

But the insolvency of the bank does not change the nature of the corporation, or the character of its officers; nor does it vest them with any new powers, or subject them to any new duties. An individual debtor, after insolvency, and even after a particular creditor has locked him up in prison, may dispose of all his effects to other creditors : he may pay whom he pleases, and in what proportion he pleases. *Estwick* v. *Caillaud*, 5 *Term Rep.* 424. *Nunn* v. *Wilsmore*, 8 *Term Rep.* 528. *McMenomy* & al v. *Ferrers*, 3 *Johns. Rep.* 84. *Willis* & al. v. *Ferris*, 5

*Johns. Rep.* 344. " If," says *Thompson,* Ch. J. in *Murray* v. *Riggs,* 15 *Johns. Rep.* 583. " there is any principle of law settled, both here and in the *English* courts, it is, that a debtor in failing circumstances may prefer one creditor, or one set of creditors, to another, except when controuled by the operation of a bankrupt system." And this principle is not less respected by courts of chancery, than by courts of law. In *Small* v. *Oudley,* 2 *P. Wms.* 427. the Master of the Rolls said, there may by *just reason* for a sinking trader to prefer one creditor to another : that the cases may be so circumstanced, that he *honestly may,* nay, *ought* to give the preference. In *Cock* v. *Goodfellow,* 10 *Mod.* 489. 497. S. C. 2 *Eq. Ca Abr.* 100. before Lord Chancellor *Parker,* the same principle was recognized. *Murray* v. *Riggs* & al. 15 *Johns Rep.* 571. before referred to, in which the opinion of Ch. J. *Thompson* was concurred in, by a large majority of the court, was a case in chancery.

The insolvency of the bank gives the court no right to interfere with its concerns. They must still be managed according to its charter. The legislature, pursuant to the power reserved, may alter or revoke the charter ; and the insolvency of the bank may induce them to do it ; but until this is done, the power of the corporation, by its officers, to controul and apply its funds, is unimpaired. What reason can be assigned, why a court of chancery should take the funds of an insolvent bank from the management of the directors, which would not equally shew, that an insolvent individual cannot controul his property ?

It is said, that all the creditors of the bank have a right to its funds, in proportion to the amount of their several claims. This is true in no other sense than it is true of an insolvent individual. In both cases, all the property ought to be applied faithfully towards the payment of the debts ; but there is no foundation for saying that *a court of chancery* can make the application.

It is said again, that it is more difficult for the creditors of a bank to secure their debts, by legal diligence, than for the creditors of an individual. This is not always true, in point of fact ; but if it were universally true, it would not alter the rules of law.

It is said further, that new rules are to be applied to an insolvent bank, because a *new state of things* exists ; the corporation being no longer capable of answering the purposes of its

New-Haven,
July,
1826.

Catlin
v.
Eagle Bank.

institution. This, so far as it is true, is equally applicable to an individual. He too experiences a *new state of things*, when he becomes insolvent. It is as true of him, as of an insolvent bank, that he can no longer carry on his business.

But it is said, that a court of chancery has certain powers in relation to corporations, which it has never exercised in relation to individuals, particularly, the power of *visitation*. This assertion is applicable only to *charitable* corporations. A bank is no more subject to visitation than a grocer's shop. The right of visitation, in relation to its proper subjects, is founded on the idea of *a trust;* and the interposition is made, in behalf of the *cestuy que trusts*, to prevent or correct *an abuse* of trust. *The Attorney General* v. *The Utica Insurance Company,* 2 *Johns. Ch. Rep.* 384. The directors of the bank are undoubtedly *trustees*; but who are the *cestuy que trusts?* Not the creditors, but the stockholders. In relation to *them*, the payment of a just debt, is not, surely, a breach of trust.

Against the claim, that all the property of the bank, from the moment of its insolvency, is *a trust fund for the creditors*, the argument *ab inconvenienti*, or rather, *ad ab surdum*, is very strong. The holder of a bank-note could not attach an article of property belonging to the bank. The trustees could not contract or pay a debt. All payments made to the bank, in its own bills,—which are debts against the bank,—would be void. If the directors were to issue bills, in the form prescribed by the charter, the corporation would not be bound.

In what way can a trust fund be constituted? It may be done, 1st, by assignment; 2ndly, by will; and 3rdly, by the positive provisions of statute, as in the case of bankruptcy. The funds of the *Eagle Bank* have been the subject of no such operation.

If a creditor of the bank be a *cestuy que trust* of its funds, he must have a *lien* upon then. But how has he acquired any lien? Does the mere fact of a debtor's insolvency, convey any right to his creditor? Can it create a lien?

On the whole, the plaintiff's claim is, in every point of view, novel and unfounded; and if it could be established, it would be attended with consequences the most disastrous and absurd.

HOSMER, Ch. J. It is an undoubted principle, that the powers of a corporation are solely derived from its charter, which is the law of its nature; and that it is invested with such powers only, as are expressly delegated, or which are necessary, to

carry the express delegations into effect. *The New-York Fire-men Insurance Company* v. *Ely* & al. *5 Conn. Rep.* 560. By the act of incorporation, the *Eagle Bank* had authority to purchase, hold and convey property, with the usual banking powers superadded ; and the directors of the bank were authorized to dispose of and manage its monies, credits and property, and to regulate its concerns, in all cases, not specially provided for. To this general grant, in relation to the rights, privileges and duration of the bank, there is neither exception nor limitation, save that the charter is alterable, amendable, and revocable, at the pleasure of the legislature. It results, undeniably, that the rights, powers and duties of the bank, so far as they depend on the act of incorporation, remain unchanged, until it is revoked, and independent of its actual solvency or insolvency. The general laws of the land, or the principles which guide this Court, as a court of chancery, may make a difference on this subject ; but setting aside these considerations, and admitting the operation of the charter exclusively, the bank is authorized to exercise the same powers, at all times, without reference to its condition.

Whether the directors of the corporation, after it has become actually insolvent, can make payment or give security to one of its creditors, and leave another unpaid and without security, is the general question to be determined. It has been contended, in behalf of the plaintiff, with no inconsiderable ingenuity, that the legislature intended to render the corporation at all times a trustee for the creditors. This suggestion is too unfounded, and too destitute of practical importance, to be admitted or discussed. Such a principle, during the solvency of the bank, must be dormant and useless ; and neither the charter, nor the nature of the case, furnishes any warrant for the supposition.

If the corporation, so far as regards its right to manage and dispose of its property, has power analogous with that which is vested in an individual, the plaintiff's bill is wholly destitute of merits. An individual debtor, who is actually insolvent, may prefer one creditor to another, unless in certain cases under the bankrupt laws ; and to do this, as was said by Lord *Kenyon*, is neither illegal nor immoral. We have no bankrupt system, to controul the acts of the insolvent merchant ; and in the absence of all legal liens, he may prefer a creditor, if the act is done in good faith. To discuss the reasons of the rule is unnecessary.

*New-Haven,*
July,
1826.

Catlin
*v.*
Eagle Bank.

It is sufficient to say to those, who are not disposed to unsettle foundations, that it is firmly and uniformly established, both at law and in chancery. *Estwick* v. *Caillaud,* 5 *Term Rep.* 420. *Nunn* v. *Wilsmore,* 8 *Term Rep.* 521. *Ho kins* v. *Gray,* 7 *Mod. Rep.* 139. *Meux* & al. *v Howell* & al., 4 *East* 1. *McMenomy* & al. v. *Ferrers,* 3 *Johns. Rep.* 84. *Willes* & al. v. *Ferris,* 5 *Johns. Rep.* 344. *Small* v. *Oudley,* 2 *P. Wms.* 427. *Cock* v. *Goodfellow,* 10 *Mod. Rep.* 489. *Phoenix* v. Assignees of *Ingraham,* 5 *Johns. Rep.* 412. 426. 427. *Hendrick* v. *Robinson,* 2 *Johns. Ch. Rep.* 283. The same rule is equally applicable to partners; and what is a banking corporation, in the essence, but a partnership authorized by a special act of the legislature? *Gow* on *Part.* 234. It is *an artificial person;* and this denomination is given to it, by reason of its resemblance to a natural person, in respect of its powers, rights and legal duties. It is difficult for me to conceive, where no restraint is interposed, in a charter of incorporation, on what ground, the general authority delegated is subjected to exceptions, or fettered by restrictions, from which an individual and a mercantile company, are free. And this difficulty is much increased, as no case intimating this diversity between corporations and individuals, has been cited, nor can be found, by my utmost researches. Where no legal lien has been obtained, it is a reasonable supposition, that the relation of creditor and debtor, must, in all cases, infer the same consequences; and that where the same mischief exists, there is the same law. The cases of an individual and of a corporation, in the matter under discussion, it appears to me, are not merely analogous, but identical; and I discern no reason, for the slightest difference between them. There exists no doubt, that there have been many instances of actually insolvent corporations, where certain creditors have been preferred to others; and the perfect silence until now, on the subject of this fancied diversity, is powerful to show what has been the universal opinion.

It however has been insisted for the plaintiff, that on the actual insolvency of the bank, the corporation were the *trustees* of the creditors; and if this be true, the latter become the *cestuy que trusts* of all the corporate estate. The consequence, on this supposition, would be, that all persons coming into possession of the bank property, with notice of the trust, must be considered as trustees. *Daniels* v. *Davison,* 16 *Ves.* jun. 249. *Moore* v. *Butler,* 1 *Scho. & Lef.* 262. No express trust was created, on the happening of the bank's insolvency; but the

charter, on every fair principle of construction, conferred on the corporation the entire controul of its property, as well after as before this event.

It however has been imagined, that the trusts arose by operation of law. I enquire of what law ? No principle, or case, or analogy has been referred to, that supports the proposition ; nor am I capable of conceiving any. The insolvent banking corporation is just as much a trustee of the creditors, and no more, as the insolvent individual is the trustee of his creditors. The relation of creditor and debtor exists in both cases ; but from this relation no trust arises. Undoubtedly, in all cases of actual insolvency, the creditor would derive security from this doctrine ; and often great losses might be prevented. But the interest of the insolvent person is not to be entirely disregarded. His creditor has voluntarily become such, with full knowledge, that his security must very much depend on the integrity of his debtor. With open eyes he has given credit ; and the public charter of the corporation has instructed him in all the powers and rights of the corporation. Now, it would be a very harsh and inequitable doctrine, but on the plaintiff's claim, it is inevitable, that the moment a banking institution is unable to pay all its debts, the directors of the bank may not issue a bank bill, dispose of bank property, make payment of a single debt, or perform one bank operation. May not an individual, or mercantile company, under the same circumstances, proceed in the usual train of business ? This is not disputed. It is the law of chancery, that they may prefer one creditor to another ; and this, on a principle of analogy, refutes, entirely, the supposition of a trust in this case. The novelty and unfoundedness of the plaintiff's claim are such, that it is difficult to support, or even to oppose it, without taking leave of every established principle, and beating the air. That the directors of the *Eagle Bank* are trustees, I admit ; but they are the trustees of the stockholders. The stockholders are the *cestuy que trusts*, and the charge of breach of trust must come from them. *The Attorney General* v. *The Utica Insurance Company*, 2 *Johns. Ch. Rep.* 371. 385.

The funds of the corporation, after its insolvency, have been called *equitable assets* ; but the name was wholly misapplied. Equitable assets, generally speaking, are such as the debtor has made subject to his debts generally, that would not thus be subjected without his act ; (2 *Fonb. Eq.* 402. n. d.) and which

New-Haven, can be reached only by the aid of a court of equity.   They are
July,
1826.     divisible among the creditors, as all property is, when placed
          under the jurisdiction of a court of chancery, *pari passu*, in
Catlin     rateable proportions. *Riggs* & al. v. *Murray* & al., 2 *Johns.*
  v.      *Ch. Rep.* 565. 577.   But they must be assets, or they cannot
Eagle Bank. be equitable assets; and this term does not express the nature
          of property, in the hands of an individual, partnership or cor-
          poration actually insolvent.   On the estate of such persons,
          there is no equitable lien to interrupt the free progress of their
          business, or prevent the fair disposition of their property.
          The case of *Benson* v. *Le Roy*, 4 *Johns. Ch. Rep.* 651. cited for
          the plaintiff, illustrates the principles advanced.   It proves only,
          that a devise of an estate to trustees, in trust to pay debts, and
          distribute the residue, places the assets under the jurisdiction
          of the court.   Undoubtedly, it does; for by the express appoint-
          ment of the devisee, the estate was a trust estate.

          There is a class of cases, in which chancery has exercised a
          controul over corporations, in relation to breaches of trust;
          but in such cases, the jurisdiction has alone been extended to
          *charitable* institutions.   *Shaw* v. *Cunliffe*, 4 *Bro. Ch. Rep.* 145.
          *Ball* v. *Montgomery*, 2 *Ves.* jun. 199.   In *The King* v. *Watson*
          & al., 2 *Term Rep.* 199. the court, however, intimated, with-
          out discussion, if any corporation misapplied monies, that it
          was an abuse of trust, which might be the subject of applica-
          tion to the court of chancery.   This case has been doubted, by
          Lord *Eldon*, in *Attorney General* v. *Carmarthen*, *Coop. Eq. Rep.*
          30., and in commenting upon it, it was observed, by the late
          Chancellor *Kent*, that the chancery cases do not recognize any
          such general jurisdiction. *Attorney General* v. *Utica Insurance
          Co.* 2 *Johns. Ch. Rep.* 384.   In the case of *Adley* v. *The Whit-
          stable Company*, 7 *Ves.* jun. 315. Lord *Eldon*, with hesitancy,
          admitted a jurisdiction in equity against a corporation, by or-
          dering an account of profits, when, by an illegal by-law, the
          plaintiff was excluded from a share of them.   This, it will be
          observed, was merely an equitable interposition, between the
          persons interested in certain profits, and does not at all support
          the principle, that chancery, in behalf of a creditor, will take
          cognizance of corporate funds misapplied.   In *Vose* v. *Grant*,
          15 *Mass. Rep.* 505. an action on the case was brought by a bill-
          holder, to recover a sum of money of the defendant, as a stock-
          holder and director of a bank; the stockholders of the bank
          having divided their capital stock among themselves, so that

the corporate funds were insufficient to redeem the outstanding notes and bills.    The action was not sustained, by the court; and in giving his opinion, it was said by *Jackson*, J., that a court of chancery would probably give relief against the stockholders. This *obiter dictum* of a learned judge, on a point not made or discussed, and without the citation of principle or case, was not intended to express any thing more, than the first impression of his mind; and this is clearly manifested by the word "probably," with which the intimation was accompanied.    On the other hand, in the *Attorney-General* v. *The Corporation of Carmarthen, Coop. Eq. Rep.* 30., the jurisdiction was denied by the chancellor, in the very case of a misapplication of funds. And in the *Mayor and Commonalty of Colchester* v. *Lowt n*, 1 *Ves. & Bea.* 226., Lord *Eldon* held, that there was no instance of a trust attaching, upon the ground of a misapplication of funds by corporations, except in the case of corporations holding to *charitable* uses.

New-Haven, July, 1826.

Catlin
*v.*
Eagle Bank.

From this discussion it is unquestionable, that the jurisdiction of chancery does not extend to the disposal of the corporate estate or funds of the *Eagle Bank*.    More time has been occupied in the examination of the principle, than perhaps can be justified, as it has no application to the case before us.    The bank has, in no proper sense, misapplied its funds.    It has done what it had a right to do, and what is uncontroulable by this Court; that is, it has preferred to pay and secure the claim of what was considered a meritorious creditor.    Of its creditors, the corporation was not a trustee; they had no lien upon its funds; and no case is made out, entitling the plaintiff to relief, or showing any jurisdiction exercisable by this Court.

The plaintiff's bill must be dismissed.

Brainard and Lanman, Js. were of the same opinion.

Peters, J. being interested in the question, and Daggett, J. having been of counsel in the cause, gave no opinion.

Bill to be dismissed.