Williams, J.
The general question for decision in this case, is, whether a corporation for profit, organized under the laws of this state, can, in the disposition of the corporate property, after it has become insolvent, and ceased to further prosecute the objects for which it was created, prefer some of its creditors over others.
•The claim of the plaintiff in error is, that when the corporation becomes insolvent and ceases to carry on business, its property and assets constitute a trust fund for the benefit of its creditors, and the directors in possession of the corporate property, being trustees for all the creditors, cannot lawfully dispose of it otherwise than for the equal benefit of all the corporate creditors. The defendant in error, on the other hand contends, that when not restricted by the law of their creation, or prevented by the operation of some bankrupt or in *499 solvent- law, insolvent corporations may, the same as natural persons, make preferences among their creditors.
Decisions of courts will be found, maintaining each of these diverse positions. The precise question has not been decided in this state, and in view of the conflict of authority elsewhere, we are at liberty to adopt that rule, which best harmonizes with the policy and legislation of the state, rests upon the sounder reason, as we conceive it to be, and coincides with our sense of justice and right.
The right of the individual debtor to prefer one creditor to another, though at the time insolvent, rests upon his complete dominion over, and consequent unrestricted power of disposition of his property. And the cases which hold that insolvent corporations are entitled to make preferences among their creditors, attribute to them, the same unlimited control over their property that is possessed by individuals over theirs. In Catlin v. Eagle Bank of New Haven, 6 Conn. 233, which is the leading case in this country maintaining the right of an insolvent corporation to prefer one or more of its creditors over others, the decision is distinctly placed upon the ground that the particular corporation was invested with the control, and power to dispose of the corporate property, as fully and to the same extent that natural persons have with respect to their property. Hosmer, C. J., in the opinion in that case, says: “ If the corporation, so far as regards its right to manage and dispose of its property, has power analagous with that which is vested in an individual, the plaintiff’s bill is wholly destitute of merits. * * * The cases of an individual and of a corporation in the matter under discussion, it appears to me, are not merely analagous, but identical; and I discern no reason for the slightest difference between them.” And again he says that “ no express trust was created on the happening of the bank’s insolvency; but the charter, on every fair principle of construction, conferred on the corporation the entire control of its property, as well after, as before this event. * * * “The insolvent banking corporation is just as much a trustee of the creditors, and no more, as the insolvent individual is the trustee of his creditors. The relation of creditor and *500 debtor exists in both cases; but from this relation no trust arises.”
We have not the charter of the corporation in question in that case before us, but we assume that the learned judge was correct in saying that by every fair construction, it conferred upon the corporation the entire control of its property after its insolvency; if so, no fault need be found with his conclusion, that it might, like any individual, prefer some of its creditors over others.
Corporations generally do not possess such amplified powers, and especially,, those created under the laws of this state. In this state, corporations have not the same powers and capacities as natural persons, but are authorized for specified and defined purposes. They are clothed with those attributes only, with which the law, under which they are created, invests them, and can exercise no powers, not expressly conferred, or necessary to carry into effect those in terms granted.
Since the constitution of 1851, it has been the settled policy of this state, to afford adequate protection to the creditors of corporations. That constitution contains the provision that “ dues from corporations shall be secured by such individual liability of the stockholders, and other means, as may be prescribed by law; but in all cases, each stockholder shall be liable, over and above the stock by him or her owned, and any amount unpaid thereon, to a further sum, at least equal in amount to such stock.” Legislation, under this constitution, has been shaped to fully effectuate the constitutional guarantee. All corporations organized for profit, are required to have a capital stock, fifty per cent, of which must be subscribed, and at least ten per cent, paid in, before the organization can be effected ; and the stockholders are made liable, in addition to their stock, to an amount equal to the stock held by them, to secure the payment of the debts of the corporation. This liability, it has uniformly been held by this court, is a security exclusively for the benefit of the creditors of the corporation, over which the corporation has no control ; and, moreover, the security is for the equal benefit of *501 all the creditors. The suit to enforce it must be by all the creditors, and against all the stockholders; and no creditor can acquire priority over the others, with respect to it. And, while power is conferred on corporations to reduce their capital stock, it is expressly provided that the rights of creditors shall not be affected, nor in any way impaired. The corporate powers, business and property of the corporation, must be exercised, conducted and controlled by a board of directors, all of whom must be stockholders; and, as a still further guarantee for creditors, the powers of corporations over their property, its use and disposition, are so circumscribed by positive statute that no corporation can employ its stock, means, assets or other property, directly or indirectly,’ for any other purpose whatever, than to accomplish the legitimate objects of its creation. The extent of the powers expressly conferred on them are, to sue and be sued, contract and be contracted with, and acquire and convey such real and personal estate as may be necessary or convenient to carry into effect the objects of the incorporation, to make and use a common seal, and do all needful acts to carry into effect the objects for which they are created. It is obvious, that the corporate property, can not with propriety be said to be owned by the corporation, in the sense of ownership as applied to property belonging to natural persons. The latter may without restriction, acquire and dispose of property for any lawful purpose, while both the power of acquisition and disposition of the former, are limited to the special objects already mentioned. The corporate property is in reality a fund set apart to be used only in the attainment of the objects for which the corporation was created, and it can not lawfully be diverted to any other purpose. As soon as acquired, it becomes impressed with the character of a trust fund for that purpose, and the shareholder or creditor may interpose to prevent its diversion from the objects of the incorporation, injurious to him. Taylor on Private Corporations, sec. 34.
The custody and control of the property, and the management of the business of the corporation, are confided to a board of directors chosen by the shareholders. Into the hands of *502 these officers, through whom alone corporations can act, the shareholders surrender their funds, and entrust the management of the affairs and property of the corporation to them. ÍA relation of trust and confidence, therefore, arises between the ¡stockholders and directors of a corporation, out of which grow ¡the duties of the latter, to so administer the trust as will best ¡promote the interests of the former, to pay them their appropriate dividends from time to time, and upon the termination of the corporation, to distribute to them their respective shares bf the corporate property, after the payment of its debts and liabilities. These duties are eminently of a fiduciary nature. fit is now so well established as to be no longer a subject of controversy, that the relation of trustee and cestui que trust subsists between the directors and shareholders. And, since the directors, as such trustees, represent and act for all the shareholders, they cannot lawfully favor any particular shareholder or class of shareholders; but every authority and power possessed by them, must be exercised for the benefit of all [alike. Otherwise, no corporation could endure. If the directors and officers of a corporation were allowed, in the conduct of the business, and disposition of the property, to favor one or more shareholders to the detriment of the others, the minority would be the prey of the majority ^ for, it would then be within the power of the majority to combine and elect the officers, who in turn should manage the whole business and apply the whole corporate property for the benefit of the majority, and thus practically confiscate the entire property interest of the minority. Corporations would thus become traps for the unwary, and legalized instruments of fraud. The doctrine that the directors are trustees for the shareholders, and for the equal benefit of all, it is obvious, is essential to the existence of corporations.
But, it is the right of the creditors, equally with the shareholders, to have the corporate property applied to the purposes for which the corporation was created, and this includes the payment of the corporate indebtedness contracted in the prosecution of its business. The rights of the creditors to the *503 •corporate property, so far as it is necessary to meet tbeir demands, are superior to those of stockholders.
In Perry on Trusts, sec. 242, the relative rights of'the creditors and shareholders are thus defined : “ A corporation holds its property in trust, first to pay its creditors, and second to distribute to its stockholders pro rata. If therefore a corporation should dissolve, and divide its property among its shareholders without first paying its debts, equity would enforce the claims of its creditors by'converting all persons, except bona fide purchasers for value, to whom the property had come, into trustees, and would compel them to account for the property and contribute to the payment of the debts of the corporation to the extent of its property in their hands.”
It is now firmly established, that the property and assets of a corporation are a trust fund for the payment of its debts, especially- in case of its insolvency. Since the case of Wood v. Dummer, 3 Mason, 311, where Mr. Justice Story is said to have first formulated the doctrine, it has been generally accepted, and is sustained by the highest authority. Mr. Justice Swayne announces it with great clearness, in Sanger v. Upton, 91 U. S. 56, 60, as follows : “ The capital stock of an incorporated company is a fund set apart for the payment of its debts. It is a substitute for the personal liabilities which subsists in private co-partnerships. When debts are incurred, a contract arises with the creditors that, it shall not be withdrawn or applied, otherwise than upon their demands, until such demands are satisfied. The creditors have a lien upon it in equity. If diverted, they may follow it as far as it can be traced, and subject it to the payment of their claims, except as against holders who’have taken it bona fide for a valuable consideration, and without notice. It is publicly pledged to those who deal with the corporation, for their security.” In Curran v. State of Arkansas, 15 How. 312, Mr. Justice Curtis said on this subject: “The capital and debts of banking and other moneyed corporations, constitute a trust fund and pledge for the payment of its creditors and stockholders, and a.court of equity will lay hold of the fund, and see that it be duly collected and *504 applied.” And in Upton, assignee v. Tribilcock, 91 U. S. 45, 47, Mr. Justice Huut thus lays down the doctrine : “ The capital stock of a moneyed corporation is a fund for the payment of its debts. It is a trust fund, of which the directors are the trustees! It is a trust to be managed for the benefit of its shareholders during its life, and for the benefit of its creditors in the event of its dissolution. This duty is a sacred one, and can not be disregarded. Its violation will not be undertaken by any just-minded man, and will not be permitted by the courts.” The doctrine is sustained by many authorities: 2 Story’s Eq. sec. 1252; Pomeroy’s Eq., sec. 1046; Taylor on Private Corp., sec. 654, 655; Haywood v. The Lincoln Lumber Co., 64 Wis. 639. It was held by this court, as early as Taylor v. Miami Exporting Co., 5 Ohio, 165, where the opinion of Mr. Justice Story in Wood v. Dummer, supra, is quoted with approbation, and it is more distinctly announced in the later case of Gooden v. The Canal Co., 18 Ohio St. 182, where it is said to be “ well settled that the property of a corporation is a trust fund in the hands of its directors, for the benefit of its creditors and stockholders.”
It being established that the corporate property is a trust fund for the benefit of the corporate creditors, it follows, that after the insolvency of the corporation is ascertained, and the objects of its creation are no longer pursued, the managing board of directors then having the custody of the property,, become trustees thereof for the creditors; and this relation, necessarily forbids any discrimination between the beneficiaries, in the distribution or application of the fund. The due execution of the trust, demands absolute impartiality toward the cestui que trustent. They mu'st be treated alike, and no preference can be made among them, without a direct violation of the duties arising from the relation. It would seem clear, that, if the corporate property constitutes a fund for the creditors, it is as much so for one creditor as for another, and that the directors in possession, are without authority to dispose of it in disregard of the rights of any creditor. They can no more discriminate between creditors in such case, than they could, before the insolvency of the cor *505 poration, between the shareholders. The objects for which the corporation was created being no longer prosecuted, and the occasion, for the exercise by the board of directors, of the power of control and disposition of the property for such purpose having ceased, there remains no purpose to which its assets can lawfully be devoted, except to the payment of the-'debts. In equity the corporate property becomes the property of the creditors, and their equities are equal. Every creditor, who became such by parting with his money, property or other thing of value to the corporation, contributed to the accomplishment of its purposes, and augmented its corporate fund; and when the fund is no longer demanded for the purposes of the corporation, the rights of the creditors become fixed instantly and equally; for each, having contributed to the1 common fund, has an interest in it, in proportion to his claim, equally with every other creditor. This interest is sometimes called the equitable lien of the creditor on the corporate prop - erty, which enables him to follow it, even after it has left the hands of the directors, wherever it can be found, except in the possession of bona fide purchasers for value, and subject it to the payment of the corporate indebtedness. It would seem to’ result as a necessary consequence, that insolvent corporations which have ceased to carry on business, can not, by pledge or mortgage of the corporate property to some of the creditors, in payment or security of antecedent debts, without other consideration, create valid preferences in their favor over others; and this is the view maintained by the more recent writers on the subject.
In the last edition of Taylor on Private Corporations, it is said: “ When corporations become insolvent, the duty of the directors toward its creditors becomes even stricter and more iuq>erative; for, under such circumstances, the rights of creditors are paramount, and it has become probable that they will be somewhat damaged; and the plain duty of directors who control the funds from which corporate debts are paid, is to see that the loss is as small as possible. Moreover, since, upon the insolvency of the corporation, the rights of unsecured creditors are equal, it would seem to be unlawful, even in the ab *506 ■sence of a statute expressly forbidding it, for directors to make preferences among them.” (Sec. 759). And, in sec. 668, it is further said : “ To allow an insolvent corporation to make an •assignment of its property, giving preferences to a portion of its creditors over the others, is unjust, as well as utterly repugnant to the doctrine that corporate property is a trust fund, on the ■credit of which persons contract with the corporation. If such property constitutes such a fund, it is clearly held in trust for ■the benefit of one creditor just as much as another, and to prefer one creditor to another is evidently .beyond the authority of the trustee. This view is far from being unsupported by •direct authority.”
Mr. Morawitz, in his excellent work on private corporations, referring to the cases which hold that corporate preferences are valid, says:
“ This doctrine, in the opinion of the writer, is wholly indefensible on principle. The capital provided for the security of the creditors of a corporation is a fund held for the benefit of all the creditors equally. That the unsecured creditors of a corporation are entitled to an equal distribution of the common security, has often been recognized by the courts of equity in adjusting the rights of creditors among themselves, and in relation to the company’s shareholders. After a corporation has become insolvent, and has ceased to carry on business, the rights of its creditors become fixed. If a corporation, whose assets are not sufficient to satisfy all of its creditors in full, can prefer certain creditors, leaving others unpaid, this must be by virtue of a power reserved by implication to the company and its agents. But this power can not justly be included in the genera] powers of management which a corporation must necessarily possess over its property, in order to carry on its business and further the purposes for which the company was formed. The purposes of a corporation are not furthered in any manner, by giving it or its agents the power, after the company has become insolvent and has ceased to carry on business, and after its shareholders have lost their interests in the corporate estate, to prefer a portion of the creditors, according to interest *507 • or mere whim, and to pay their claims in full, leaving the •others wholly without redress. The doctrine that an insolvent corporation may prefer certain creditors at the expense of others, seems to have been first started in Catlin v. Eagle Bank, (6 Conn. 233), a case in which the fundamental rule that the assets of an insolvent corporation constitute a trust fund pledged for the security of creditors was denied. It- is a doctrine which is at variance with the whole theory of the law concerning the rights of creditors of insolvent corporations, .and is contrary to the plainest principles of justice.” (2 Morawitz, Corporations, sec. 803).
And in a very recent work on insolvent corporations it is said : “ The practical working of the rule sustaining corporate preferences is monstrous. The unpreferred creditors have •only a myth or shadow left to which resort can be had for payment of their claims; a soulless, fictitious, unsubstantial entity that can be neither seen nor found. The capital and assets of the corporation, the creditors’ trust fund, may, under this rule, be carved out and apportioned among a chosen few, usually the family connections or immediate friends of the •officers making the preference. This rule of law is entitled to take precedence among the many reckless absurdities to be met with in cases affecting corporations, as being a manifest ti’avesty upon natural justice.” (Wait on Insolv. Corporations, § 162). “ Elsewhere we have deprecated the right which is recognized in a number of cases, of insolvent corporations to make preferential assignments. It would seem to be an idle waste ■of words to designate the capital and assets of a corporation as a trust fund for the benefit and security of creditors in the •event of dissolution or insolvency, if one of the first principles -of the law of trusts — equality of distribution — could be openly violated, and the effects of the bankrupt company apportioned .among a favored few.” (Ib., § 654).
Without extending the discussion, we are of opinion that when a corporation for profit, organized under the laws of this state, becomes insolvent and ceases to carry on its business or further pursue the purposes of its creation, the corporate property constitutes a trust fund for the equal benefit of the cor *508 porate creditors, in proportion to the amounts of their respective claims; and that it cannot then, by pledge or mortgage of the property to some of its creditors as security for antecedent debts, without other consideration, create valid preferences in their behalf, over the other creditors, or over an assignment, thereafter made for the benefit of creditors.
Instead of the individual liability of the stockholders being-a ground of objection to this conclusion, it furnishes an additional reason in its support. It is well settled tha* the corporate property is the primary fund for the payment of the debts, of the corporation, and the statutory liability of the stockholder is a security to be resorted to only when the payment of its debts can not be enforced against its property; and it was held in Harpold v. Stobart, decided at this term,* that stockholders who have assigned their stock to an insolvent, assignee, are. liable only for such portion of the debts existing while they were such stockholders, as is equal to. the proportion which their stock bears to- the stock held by all stockholders liable for the same debts. Admit the-power of the board of directora of an insolvent corporation to make preferences among its creditors, and it must follow that they may prefer any they choose to select, for that purpose. This would be wholly inconsistent with the trust relation subsisting between the directors and shareholders, for since different stockholders, or classes of stockholders may be liable for different debts, and not all for the same debts, if the directors could apply the corporate property to some of its debts leaving others entirely unprovided for, they would be at liberty to select the debts for which particular stockholders alone were liable, and appropriate all of the property to their satisfaction, leaving the other stockholders to respond to the full extent of their statutory liability, for the remaining debts. The directors would in this way, be enabled to apply the whole corporate property to their own exoneration.
Whether an insolvent corporation, which is still a going concern, and in good faith engaged in the prosecution of its *509 business, may borrow money, or contract, or procure an extension of other bona fide indebtedness, and convey or pledge the corporate property in security thereof, is a question not involved in this case, and upon which we here express no opinion.
It appears from the finding of facts in this case, that the •directors of the corporation declared its insolvency, and directed by the same resolution, the execution of an assignment for the benefit of its creditors, and of the preferential mortgages to the bank, and other creditors. It does not appear, that, there had been any agreement between the mortgagees and the corporation that such mortgages should be given, nor, that they were given for any other consideration than the antecedent indebtedness of the corporation to the creditors receiving them. Being merely voluntary mortgages to secure pre-existing debts, without other consideration, they can not prevail against the equitable rights of the corporate creditors. Lewis v. Anderson, 20 Ohio St. 281.
Counsel have argued at length, and with great ability, another question sufficiently raised on the record, and that is, whether, in view of the facts found by the court below that the execution of the assignment for the benefit of creditors, and the preferential .mortgages, was directed by the same resolution, and were in fact executed at the same time, the several instruments may not be treated as constituting together an assignment in trust, with intent to prefer the mortgagees, and so inure to the equal benefit of all creditors. The determination of this question not being necessary to the decision of the case, no opinion is expressed upon it.
Other questions presented in the argument, and considered by the court, do not call for further report.
No serious objection is made here to so much of the judgment of the court below as establishes the amount of the plaintiff’s claim, and requires the assignee to allow the same in the administration of his trust, and to that extent the judgment is affirmed. But the judgment establishing the validity of the mortgage, and giving it priority over the assignment, *510 is reversed, and judgment will be entered upon that branch of the case for the trustee.

Judgment accordingly.

 Ante, page 397.