## BENSON and others, Executors of RUTGERS, *against* LE ROY and others.

Where a testator devised all his estate, real and personal, to four trustees, three of whom were his executors, in fee, in trust, to pay his debts, and then to distribute the residue : *Held*, that by the *trust*, the assets were placed under the jurisdiction of this Court.

The statute, *sess*. 36. *ch*. 93. (1 *N. R. L.* 316.) does not interfere with the doctrine of equitable assets, by which all the creditors are to be paid equally, *pari passu ;* for the omission of the 4th section, or proviso of the *English* statute, (3 *W*. & *M. c.* 14.) which excepted devises of lands for the payment of debts, does not vary its construction.

The Court will, therefore, in such case, enjoin a suit brought by a creditor, at law, for the purpose of gaining a preference over the other creditors.

THE plaintiffs, *Egbert Benson, Charles McEvers,* and *Roswell L. Colt, executors of Anthony Rutgers,* deceased, in behalf of themselves and other creditors of *Jacob Le Roy,* deceased, who should come in and contribute to the expense of the suit, filed their *original bill,* on the 14th of *November,* 1818,

*Dec. 15th.*

against *Peter A. Jay*, administrator, with the will annexed, of *Jacob Le Roy*, deceased, *Martha Le Roy*, widow, and *Harriet*, *Goldsbrow*, *Mary* and *Cornelia*, children of the said *J. Le Roy*, and *Campbell P. White*, for an account of the real and personal estate of the said *J. Le Roy*, and for a sale of the real estate, and praying that out of the moneys thence arising, the plaintiffs, and the other creditors, who should come in, &c. might be paid their several debts, with interest and costs, and that all proper parties might join in the sale of the real estate. The original bill, also, set forth the substance of the will of *J. Le Roy*, by which he devised in fee, to *Herman Le Roy*, *Robert Le Roy*, *Jacob Livingston*, and *Roswell L. Colt*, all his estate, real and personal, in *trust, to pay his debts*, and then to distribute, &c. By the will, the said *H. Le Roy*, *Robert Le Roy*, and *R. L. Colt*, were appointed executors, with power to sell his real and personal estate, with the consent of his wife, the said *Martha. Jacob Livingston*, the other devisee in trust, was not an executor. The defendants named, appeared, and the bill was, afterwards, *amended*, by adding *Herman Le Roy*, *Robert Le Roy*, and *Jacob Livingston*, the above named *devisees in trust*, as parties defendant. Before the original bill was answered, the plaintiffs, on the 24th of *May*, 1819, filed a *supplemental bill*, stating, that since the original bill was filed, they had discovered and now charged, that *Jacob Le Roy*, at his death, was largely indebted, and, among others, to *John S. Roulet*, executor of *Victor Moreau*, deceased, by bond to the said *J. S. Roulet*, in his own right, to *Elizabeth Hyde*, *Mary Hoffman*, and *Robert Le Roy*, severally, on simple contract. That *Martha Le Roy*, widow, having procured assignments to her, by those creditors, in consideration of paying or securing to them, the payment of the said debts, in whole or in part, caused suits at law, for the recovery thereof, to be brought in the names of those creditors, against *H. L.*, *R. L.*, *J. L.*, and *R. L. Colt*, the said *devisees*, and against the children, *the heirs at law* of the said

*J. Le Roy*; and that in *January* last, judgments, by confession, were obtained in those suits, (stating them,) that executions had issued on two of the judgments, and the sheriff of the City and County of *New-York*, by virtue thereof, had levied on all the real estate of *J. Le Roy*, and advertised the same for sale. That the debts, on which these two judgments were recovered, belong, by assignment, to the said *Martha Le Roy*, who had commenced and prosecuted the suits, in concert and collusion with the heirs and devisees, in order to secure to her a preference over the plaintiffs, and the other creditors, and to defeat that equality of payment which the plaintiffs sought to establish. *Prayer* for an injunction to restrain *Martha L.* from selling the real estate under those executions. The injunction was granted, *May* 22d, 1816.

The defendants answered. The material allegations in the bill were admitted, except as to the charge of collusion. *Martha L.* also stated, that she paid, out of her property, the debts mentioned, and took assignments thereof, and had obtained judgments and issued executions, in order to obtain, by legal diligence, priority of payment; and she insisted on her right so to do.

*T. A. Emmet,* for the defendant, *Martha Le Roy,* now moved to dissolve the injunction. He cited *Stat.* 3 and 4. *W.* and *M. c.* 14. *s.* 4. (made perpetual by 6 *W.* 3. *c.* 14.) as containing a clause, not inserted in our act. (1 *N. R. L.* 316. *sess.* 36. *ch.* 93. *s.* 1.) 1 *Fonbl. Equ. b.* 1. *c.* 4. *s.* 14. *note* i. 1 *Madd. Ch. Pr.* 254. He insisted that the *assets* were *legal,* and liable to legal preferences under our statute.

*T. L. Ogden* and *Boyd,* contra, contended, that as by the will, the lands were devised for the payment of debts, they became *equitable assets.* They cited *Lupton* v. *Lupton,* 2 *Johns. Ch. Rep.* 614. *Toller's L. of Ex.* 289, 413,

1820.

BENSON
v.
LE ROY.

*November 4th.*

1820.

BENSON
v.
LE ROY.

414, 415. 2 *Atk.* 50. 1 *Madd. Ch. Pr.* 473. 359. 438. *Moses* v. *Murgatroyd*, 1 *Johns. Ch. Rep.* 119. 130. 3 *Johns. Ch. Rep.* 53, 59. 349. 1 *Vernon* 45. *Prec. in Ch.* 430. *Gilb. Equ. Rep.* 111. 2 *Vern.* 708. 1 *P. Wms.* 430. 1 *Bro.* 135, 136. *n.* 2 *Bro.* 94. 7 *Vesey*, 314. 8 *Vesey*, 26. 1 *Rob. on Wills*, 211. 218. *n.* 2.

THE CHANCELLOR. The testator in this case devised all his estate, real and personal, to four trustees, (of whom three were made executors,) in fee, and in trust to pay his debts, and then to distribute the residue. Such a devise in trust places the assets under the jurisdiction of this Court. A Court of law does not take cognizance of a trust, but the notice of it belongs, peculiarly and exclusively, to this Court.

Before the statute of 3 *W. & M.*, if the testator devised his lands for the payment of his debts, all the creditors were to be paid *pari passu*, or in rateable proportions, for it was to be presumed that the testator meant to do equal justice to all. Thus in a case before Lord *Nottingham*, in 1681, (*Anon.* 2 *Ch. Ca.* 54.) the testator devised his lands to trustees to pay debts, and the trustees being themselves creditors, paid themselves in full, and left other creditors unsatisfied, who then filed their bill for a rateable payment. The Chancellor held, that under that devise, all creditors were to be paid equally, and that the trustees could not give themselves a preference.

The statute of *W. & M.* did not interfere with this doctrine of equitable assets, but rather gave it, as it has been said, a parliamentary sanction. That statute (3 *W. & M. c.* 14.) was made *for a relief of creditors against fraudulent devises*; and so the preamble to it, as well as its title, expressly declares. It does not apply to the case of a devise to trustees for the payment of debts, for such a devise is in furtherance of justice, and of the avowed policy and purpose of the statute. To mark that policy the more

distinctly, the 4th section of the statute expressly excepted from its operation devises of lands for the payment of debts or children's portions. The omission of this proviso in our statute cannot make the least alteration in its construction. It must have been omitted, because it was unnecessary, and was doubtless inserted in the *English* statute for greater caution. It is impossible to suppose that an honest devise for payment of debts, could be affected by a statute made on purpose to protect creditors against fraudulent devises. The devisees intended by the statute, were those who took a *beneficial* interest under the will, to the injury of creditors. The statute does not apply to cases of trusts created by will to pay debts. This we cannot, for a moment, suppose. The general provisions in the *English*, and in our statute, (which are the same,) apply only to suits at law against heirs and devisees claiming the entire interest for themselves, and against whom judgment and execution may be awarded, for the lands which have come to their hands; but a judgment and execution at law against a naked trustee holding lands in trust for others, could not affect the rights of the *cestuy que trust*.

It is observed by *Fonblanque*, (*b*. 1. *c*. 4. *sec*. 14. *note*.) in a passage referred to by the counsel, that bond creditors are liable to be " prejudiced" by the power to devise for the payment of debts reserved by the statute of 3 *W. & M.*, because, that under such a devise simple contract creditors are entitled to be paid *pari passu*, and bond creditors will thus lose their legal priority. But that is a prejudice, if it can be so called, that the statute never intended to remove, because, as I observed before, the whole object of it was to defeat *fraudulent* devises; and the payment of debts by a just and equal distribution of the debtor's fund, is not a hardship, and much less a fraudulent provision towards any person. It is an act of such justice and pure equity, that the Legislature has always been solicitous to encourage it.

1820.

BENSON
v.
LE ROY.

Thus the statute provides, (1. *N. R. L.* 452.) that when real estate is sold by order of the Court of Probates, or of a Surrogate, for the payment of debts, the proceeds are to be distributed among the creditors, in proportion to their debts, without giving preference to specialties. The assignees of insolvent debtors are also directed, by another statute, ( 1 *N. R. L.* 469.) to make distribution equally among creditors, without giving preference to specialties. The same rule is also directed by another statute to be observed ( 1. *N. R. L.* 161.) by trustees of absent or absconding debtors. And we may safely conclude, that though the first section or proviso in the *English* statute of *W. & M.* was omitted in our statute, the omission could not have been intended to perpetuate the common law doctrine of preferences between creditors, in case such a trust should be created by will. Such a devise in trust must be a valid devise, and subject to equity distribution. That will not be disputed. It must follow, then, of course, without some express statute provision to the contrary, that the fund is to be regarded as equitable assets.

In *Freemoult* v. *Dedire*, (1 *P. Wms.* 429.) it was admitted, that if lands be devised for the payment of debts, they were to be considered as equitable assets, and bonds, and simple contract debts were to be paid equally. In *Deg* v. *Deg*, (2 *P. Wms.* 412.) a distinction seemed to be made between a devise to executors, and a devise to strangers to pay debts; but in that case, it was admitted, that if the devise was to executors, *and to a third person*, (as was the case in the present instance,) the same conclusion followed. But this distinction has been since exploded, and the law of the Court on the subject was fully discussed and settled by Lord *Camden*, in *Silk* v. *Prime.* (1 *Bro.* 138. note. *Dickens*, 384.) The testator, in that case, charged all his real estate with the payment of his debts, and directed his executors, and *their heirs*, to sell it, if wanted for that

+ fourth

purpose. The Master of the Rolls decreed, that the assets arising from the sale were to be considered equitable assets, on the ground, that the devise was to the executors and their heirs, by which means the descent to the heir was broken. This decree was affirmed, on appeal, in 1768, by Lord *Camden*, and he observed, that the assets did not come to the executors in their character as executors, and the rule was settled, that the assets were not legal, unless the executors took them *qua* executors. A devise to executors, and their heirs, made them *trustees ;* and though the real and personal estate were made one fund by the will, yet Lord *Camden* did not regard that objection, but said that Chancery marshalled the assets. The charge, in that case, was considered as amounting to a trust, and being a trust, equity directed the execution of it upon equitable principles.

In *Newton* v. *Bennet,* (1 *Bro.* 135.) Lord *Thurlow* referred to the former case, and said, that an estate devised to an executor to sell, was equitable assets ; and from some correct notes of this case, (7 *Vesey,* 321. 322. 8 *Vesey,* 30.) it appears, that he did not consider it to be requisite that the descent should even be broken by the devise, to render the assets equitable. It has since been repeatedly held, (*Bailey* v. *Ekins,* 7 *Vesey,* 319. *Shepherd* v. *Lutwidge,* 8 *Vesey,* 26.) that a mere charge of the debts upon the real estate by will, makes it equitable assets, even though the descent be not broken. It is sufficient that the estate be devised upon trust to pay debts ; and a charge of the debts upon the real estate, is, in substance and effect, a devise *pro tanto.* This was the doctrine of Lord *Eldon* in those cases ; and he made this clear and pertinent observation, that a provision by will, effectual in law or equity for payment of creditors, was not a fraudulent devise within the statute. And I may add, that such a devise is equally valid and innocent, and commendable withal, as it would be under the protection of the proviso in the *English* statute.

1820.

BENSON
v
LE ROY.

The case now before me steers clear of every difficulty. It comes within all the cases, ancient and modern. Here the descent is broken, and here is a devise in fee, and to a stranger, as well as to the executors.

Seeing, then, that here has been a trust created by will, for the payment of debts, this Court is bound to take care that the trust is executed ; and to interpose, if necessary, against a proceeding at law intended to defeat it. Lord *Eldon* admitted this consequence in *Shepherd* v. *Lutwidge.* The widow of the testator has been purchasing in debts due from the estate, and suing them at law, with the avowed purpose of gaining, by her diligence, a legal preference over other creditors. This has been done with knowledge of the provisions in the will, in which she had a personal interest, and with full notice of the trust. Her acts have tended to defeat the trust, and to prevent this Court from causing it to be executed by a fair and equal distribution of the fund rateably among the creditors. In such a case, a race of legal diligence cannot be permitted, nor can such a creditor, and more especially a voluntary purchaser of debts, who was a party under the will, and had due notice of its provisions, be suffered to change the character of the assets, and turn them from equitable into legal. This would be to arrest the trust from the jurisdiction of this Court, and destroy the rights of the *cestui que trusts,* who are the creditors at large.

Motion to dissolve the injunction denied.