JONES *vs.* THE TERRE HAUTE AND RICHMOND RAIL ROAD
COMPANY.

*Prima facie* all stockholders in a corporation, at any particular period, are
equally interested in the property and business of the corporation. *Per*
INGRAHAM, J.

And when the directors undertake to distribute among the stockholders any
portion of the funds or property of a corporation—whether it be called
profits or not—all the then stockholders are entitled to an equal share in the
fund, proportionate to their stock; whether they have been stockholders
for a longer or shorter period. *Per* INGRAHAM, J.

Unless the charter gives the directors power to discriminate between the
stockholders at different periods, in the distribution of profits, they are all
entitled to share therein.

Where, by a resolution of the board of directors, a dividend is made to the
persons then holding stock, without any discrimination, out of the surplus
earnings of the corporation for a given period, payable at a future day, all
who are stockholders on the books of the company, at the time the divi-
dend is declared, are entitled to share therein.

*It seems* that a board of directors, in making a dividend, cannot limit it to
persons holding stock at any given time, to the exclusion of others, who
acquire stock before the dividend is declared, although subsequent to the
date fixed by the board of directors.

APPEAL from a judgment entered at a special term. The
plaintiff owned four of the defendants' bonds, purchased
before January 1, 1856, and delivered in this state, for the
payment each of $1000 and interest, in the usual form, but
containing also the following special clause: "And the said
company also agree, to transfer to the holder hereof at any
time before the said principal sum shall fall due, whenever
such holder shall elect to receive the same on delivery of this
obligation, and of the unpaid coupons or interest warrants, to
the treasurer of said company, at Terre Haute, twenty shares
of fifty dollars each of the capital stock of said company, in
exchange for and in satisfaction of this obligation. And said
company further agree, that this obligation and all rights and
benefits arising therefrom, may be transferred by general or
special indorsement or delivery, as though the same were a note
of hand and payable to bearer, hereby waiving all benefit from

appraisement, valuation or stay-laws." On November 26, 1856, the plaintiff mailed the bonds and interest coupons to the defendant, inclosed in a registered letter, post paid, and properly addressed, with a written demand that the bonds should be converted into stock according to said special clause. The letter reached Terre Haute (the place of address) on November 30, 1856. According to the course of business in the post office, registered letters are not distributed and delivered as ordinary letters are, but are placed by themselves, and the parties to whom they are addressed are required to call or send for them, and give a receipt on taking them from the office. On the 1st or 2d day of December, 1858, the messenger who usually attended to the defendants' post office business, was informed that there was in the post office a registered letter for the defendants, but did not communicate the information, in consequence of the absence from town of Wood, the defendants' secretary, and the letter was not actually delivered to the defendants until December 3d, 1856, they being meanwhile ignorant of its contents. On December 16, 1856, the defendants mailed to the plaintiff (by letter received December 20, 1856) a certificate, in the usual form, dated December 3, 1856, for eighty shares of their stock, in lieu of such bonds, and a check for interest on the bonds to December 1st, 1856, which check was forthwith mailed back and returned by the plaintiff to the defendants. On December 17, 1856, the defendants declared a dividend, by resolution, in the following words : "At a meeting of the board of directors of the Terre Haute and Richmond Rail Road Company, held Wednesday, December 17, 1856, it was ordered that a dividend of seven per cent be declared out of the surplus earnings of the road, ending November 30th, payable January 6th. It was also further ordered that a stock dividend of twenty per cent, payable in stock, and charged to the surplus account, be paid to the holders of stock at the close of the fiscal year, November 30th. Fractional shares to be paid in cash."

A notice of the dividend was published in the public jour-

nals, dated December 17th, 1856. The plaintiff claimed in the complaint to share in this dividend of December 17, 1856, first, as being entitled to the rights of a stockholder of eighty shares on November 30th, 1856, and secondly, as being a stockholder actually and to all intents before the declaration of the dividend. The defendants, in their answer, averred "that the plaintiff was not a holder or owner of said eighty shares, or any of them, on said 30th of November, nor until some days thereafter, and therefore was not entitled by means of said shares to the said dividend declared on the said 17th day of December, or any part thereof."

The charter of the defendants (§ 24) provided as follows : "Semi-annual dividends of so much of the profits as the corporation may deem expedient, shall be made on the first Mondays of December and July annually, unless the directors fix on a different day, and pay the stockholders as soon thereafter as they can with convenience." Prior to 1856 the defendants' fiscal year terminated on December 31st, and the first dividend during the year 1856, was declared by the defendants January 28th, 1856. On the 15th of January, 1856, the defendants passed the following resolution : "At a meeting of the board of directors of the Terre Haute and Richmond Rail Road Company, held January 15, 1856, it is ordered that hereafter the fiscal year terminate on the 30th of November, and that hereafter the dividend be declared on the business of the road for the six months ending May 31st and November 30th." The second dividend during 1856, was declared June 20, 1856, payable July 1st, 1856, and was received, soon after it was declared, by the plaintiff, who was then a stockholder in the company. On the 30th of November, 1856, the defendants' stock and transfer books were closed, and continued so closed for the space of fifteen days thereafter. Notice that said books would be closed was published in the state of Indiana on November 22d, 1856. The defendants, on previous occasions, always closed their books before declaring a dividend. Between January and July,

1856, the plaintiff was informed by a stockholder in the com-
pany, of the above mentioned resolution of January 15, 1856,
and on the 1st of November, 1856, was informed by the same
stockholder that the books of the company would be closed
on November 30. The court below found "that it is a gene-
ral, but not a universal, custom among companies to close the
books before declaring a dividend, and that the extra stock
dividend was declared from earnings from business up to
November 30th, 1856."

The justice before whom the action was tried found as con-
clusions of law : *First.* That the arrival of the written de-
mand, and accompanying bonds, in the post office at Terre
Haute, on the 30th day of November, and the receipt of the
same by the defendants, on the 3d of December, did not,
under the circumstances, give the plaintiff, actually or con-
structively, any right, as stockholder or otherwise, to the
dividend afterwards declared on the stock, business and affairs
of the defendants, as the same stood and were on the 30th
November, the close of the fiscal year, nor any legal claim to
damages against the company. *Second.* That the issue of a
certificate of stock to the plaintiff, as hereinbefore stated, did
not in law give the plaintiff any right to a share of the divi-
dend, declared December 17th, on the business and affairs of
the company, as the same stood and were on November 30th,
nor a legal claim to damages against the defendants for non-
payment. *Third.* That the resolution in regard to said
dividend did not in terms, according to its legal construction,
give the plaintiff any right to said dividend, or any part
thereof or to damages for non-payment of the whole, or any
part thereof. *Fourth.* That the defendants should accordingly
have judgment on the merits, with costs of action.

Judgment was accordingly entered for the defendants, and
the plaintiff appealed.

*S. W. & R. B. Roosevelt,* for the appellant.

*C. P. Kirkland,* for the respondents.

*By the Court,* INGRAHAM, J. The plaintiff was the holder of four bonds issued by the defendants, a corporation chartered by the state of Indiana, for $1000 each. These bonds contained a clause by which the defendants agreed to transfer to the holder thereof, at any time before the same fell due, whenever the holder should elect to receive the same, on delivery of such bond and of the unpaid coupons to the treasurer of the company at Terre Haute, an equal amount at par in the shares of the capital stock of said company, in exchange for such bonds. The charter of the company provided that semi-annual dividends of so much of the profits as the directors should deem expedient, should be made on the first Mondays of December and July, unless the directors should fix on a different day, and pay the stockholders as soon thereafter as they could with convenience. On the 26th of November, 1856, the plaintiff mailed his bonds, with the unpaid coupons, to the secretary of the defendants, with a demand inclosed, requesting to have the same converted into capital stock, according to the condition in the bond. Such letter reached the post office in Terre Haute on the 30th November. The defendants did not take the letter from the post office on that day, and it was not actually received by the defendants until the 3d of December. On that day the secretary informed the plaintiff that his bonds were received too late for the stock to be entitled to dividend for the six months ending November 30th. On the 16th December the secretary sent to the plaintiff a certificate of stock, dated 3d December, and a check for interest up to 1st December, being three months, on the bond, on one half of the amount of the coupon first coming due. This check the plaintiff returned.

On the 15th January the directors passed a resolution ordering that the fiscal year thereafter terminate on the 30th November, and that dividends be declared on the business of the board for six months, ending 31st May and 30th November. The stock and transfer books were closed on the 30th of November, and continued closed fifteen days, and were

opened on the 16th of December. On the 17th of December the defendants declared a dividend, as follows: "Ordered that a dividend of seven per cent be declared, out of the surplus earnings of the road, ending November 30th, payable January 6th. It is also further ordered that a stock dividend of twenty per cent, payable in stock and charged to the surplus account, be paid to the holders of stock at the close of the fiscal year, November 30th. The plaintiff demanded the cash dividend and stock dividend, both of which were refused, and he brought this action to recover the same.

The cause was tried before a justice, without a jury, who found as matter of law, that the issue of stock to the plaintiff did not entitle him to a share of the dividend declared on the 17th December, nor to any damages against the defendants for non-payment, and that the terms of the resolution did not give the plaintiff any right to said dividend or any part thereof, or any damages for non-payment thereof. To these rulings the plaintiff excepted.

It must be conceded that before making the dividend on the 17th of December, the plaintiff had, by the act of the company, been admitted a stockholder, of the date of the 3d December, and even if his rights did not attach until such certificate was actually issued, the issue of it on the 16th December, and placing it that day in the post office, was an issue to him of the stock at that time, and entitled him to all the rights of a stockholder.

Had the corporation declared a dividend while the books were closed, and before the plaintiff was admitted on the books to be a stockholder, by the issue to him of the stock, it might have become necessary to inquire whether the arrival of the plaintiff's letter at Terre Haute, on the 30th November, in the post office, gave him any right to be deemed a stockholder as of that day. The condition of the bond was that the same should be presented to the treasurer at Terre Haute. This condition was not complied with by sending a letter to the secretary, which was not received by him until a subsequent

date, and gave the plaintiff no right to be deemed a stockholder. If it had been shown that application for letters on that day was purposely avoided, another question might arise on this branch of the case which it is not necessary now to discuss.

Prima facie all stockholders, at any particular period, are equally interested in the property and business of a corporation. They assume the same liabilities, are entitled to the same rights, and are equal owners of the property. When, therefore, the directors undertake to distribute among the stockholders any portion of the funds or property of a corporation—whether it be called profits or not—all the stockholders are entitled to an equal share in the fund, proportionate to their stock; whether they have been stockholders for a longer or shorter period. Unless the charter gives the directors power to discriminate between the stockholders at different periods in the distribution of profits, they are all entitled to share therein. The designation of a fiscal year has nothing to do with the distribution of its proceeds among the stockholders at the close thereof. It may be more properly referred to as the period for making up on the books annual accounts. If it limited the profits to those who held stock at that time, it would alike exclude stockholders who subsequently acquired stock from any surplus remaining after the dividend was declared, as it would from a participation in the dividend then made. But it is not even necessary for the purposes of this appeal to invoke the aid of these principles. By the terms of the resolution itself, the seven per cent dividend in cash was made to the stockholders then holding stock, without any discrimination. This dividend was declared to be a dividend of seven per cent out of the surplus earnings of the road, ending November 30th, payable January 6th. It was not limited, as the stock dividend was, to those who held stock at the close of the fiscal year. It was unlimited. Who were then entitled to it? The stockholders. Who were they? All who held stock when the resolution was passed, on the 17th December.

The plaintiff was at that time a stockholder, by the voluntary act of the defendants. As such he was entitled to a dividend on his stock, under this resolution, just as much as were the other stockholders. Any other rule would give to the officers of a company a discretionary power as to whom they would pay dividends to. They must pay to the persons holding stock on the books of the company. If the directors, in making the dividend, do not limit the period, the officers have no right to do so, and their only guide is the stock book to ascertain the parties entitled thereto at the date when the dividend is declared. As the plaintiff was a stockholder on the books of the company at the time the dividend was declared, he was entitled to the cash dividend under the resolution as passed by the board of directors on the 17th of December, 1856.

I do not mean to be understood as applying these rules to a case where the dividend is declared before the books are opened. There the officers must be governed by the books as they existed at the time they were closed, and the distribution be made accordingly.

The views above expressed dispose of this appeal, and render a new trial necessary. It is therefore not requisite that we should examine the other question in the case, viz. whether a board of directors, in making a dividend, can limit it to persons holding stock at any given time, to the exclusion of others who subsequently acquire stock. The question is not free from difficulty, and I am inclined to the opinion that the board of directors had no power thus to diminish the value of the stock. But as a new trial must be ordered, we refrain from expressing any further opinion thereon, at the present time.

New trial ordered; costs to abide the event.

[NEW YORK GENERAL TERM, May 2, 1859. *Roosevelt*, *Pratt* and *Ingraham*, Justices.]