BRUNDAGE *et al.*, Executors, etc., v. BRUNDAGE *et al.*

*Will — construction of — dividends upon corporate stock — title to.*

A testator, by his will, gave to his wife during her life, twenty shares of New York Central Railroad stock of $100 each. To his daughter M. E. C., at the decease of his wife, ten shares of the same stock, of $100 each. To his daughter S. S. B., at his decease, sixteen shares of the same stock, of $100 each, and $1,000 in New York Central Railroad bonds. He gave specific legacies to his son C. C. B., and also the surplus after paying legacies, etc. By a codicil he gave S. S. B. ten shares instead of sixteen. The will was made in 1858. The last codicil in 1860. The testator died June 22, 1869. He owned stock in the New York Central Railroad Company. He received from that company, March 24, 1869, scrip certificates to the amount of eighty per cent of his stock. These were payable out of the future earnings of the company, and convertible into stock at its election. The testator received dividends on this scrip. After his death the New York Central and Hudson River Railroad Companies were consolidated and a new company formed, which company issued to the stockholders of the New York Central Railroad, certificates whereby it agreed to pay twenty-seven per cent on the amount of their stock, either in cash out of the future earnings of the company or stock at its option, and until paid, to pay dividends thereon at the same rate as on the stock. At the time of testator's death he owned no New York Central Railroad bonds.

*Held,* that the widow was not entitled to any share or interest in the eighty per cent scrip issued before testator's death, but the same passed to C. C. B., residuary legatee. She was entitled to the dividends upon the twenty-seven per cent scrip, and to income from stock in the consolidated company. On her death ten shares of the stock passed to the daughter M. E. C. It was the duty of the executors to purchase, out of the funds of the estate, New York Central Railroad bonds, and deliver them to S. S. B., or if not able to

purchase, to pay her the market value thereof, thirty days after the testator's decease.

A dividend earned, but not declared, belongs to the person owning the stock when the dividend is declared, and not to the owner of the stock before such declaration.

APPEAL from judgment of the special term in Ontario county, giving a construction to the will of Nathan Brundage.

Nathan Brundage died on the 22d day of June, 1869, leaving a last will and testament bearing date the 22d May, 1858, together with two codicils, one of which was dated August 2, 1858, the other, May 23, 1860. The will and codicils were duly proved before the surrogate of Ontario county, and letters testamentary were issued to the plaintiffs, who were designated in the will as executors thereof.

The testator left surviving him his widow Eliza and the defendants, and Charles C. Brundage, one of the plaintiffs, his only heirs at law.

He died seized of several pieces of land in said town of Hopewell, all of which, except a house and lot, he owned at the date of his will. The house and lot he purchased after the date of the will, for the reason that his son-in-law, Chester A. Collar, to whom he had devised his farm, charged with the support of the testator and his wife during their lives, had refused to support them, and he, the testator, was obliged to purchase the house and lot for a home for himself and wife.

At the time of his death, and for several years prior thereto, the testator owned shares of the capital stock of the company originally known as the New York Central Railroad Company, afterward merged by consolidation with the Hudson River Railroad Company.

After the will was made, and on or about the 24th of March, 1869, the testator received from said company certificates of scrip for the amount of eighty per cent on the capital stock of said company then owned by him. This scrip he owned at his death, and he had received dividends thereon before his death. He did not own any railroad bonds at the time of his death.

The scrip certificates were payable out of the future earnings of the company, or convertible into stock of the company at its election.

After the death of the testator, the two companies above named were consolidated, and the new company, in order to equalize the interest of the stockholders of the two companies in the new company, issued to those holding stock in the New York Central Com-

pany certificates, whereby the consolidated company agreed to pay to the former stockholders in the Central twenty-seven per cent of the amount of stock held by such stockholders respectively, out of the future earnings of the company, or in stock at the election of the company, and until paid, it agreed to pay dividends thereon at the same rates and terms as upon the stock.

By the will, the testator gave to his wife twenty shares of the New York Central Railroad stock of $100 each, $2,000 in cash and other personal property during her life, and after her decease, $1,000 of the railroad stock, and the $1,000 in cash given to the widow, was to go and belong to his heirs.

By the third clause of the will he gave to his daughter Mrs. Collar, ten shares of stock in the New York Central Company, of $100 per share, after the decease of his wife.

By the fourth clause he gave to his daughter Sarah sixteen shares of the New York Central stock of $100 each, and $1,000 in the bonds of the same company, at his decease, and $1,000 in cash at the decease of his wife.

And by the last clause he gave to his son Charles C. the surplus, if any, after paying all his debts, legacies, bequests and devises, and his funeral expenses.

By the first codicil he gave to his daughter Sarah, at his decease, ten shares of New York Central stock of $100 each, and at his decease to his son Charles $1,600 of New York Central stock, and the funeral expenses of his wife to be paid out of the surplus before division.

By the second codicil he revoked the bequest of $1,600 of stock to his son Charles, and gave him in lieu thereof a bond and mortgage for $1,250 that the testator held against him.

By the second clause of the will the testator gave to his son-in-law, Collar, a farm in said town of Hopewell, of ninety-five acres, in consideration of his, Collar, taking care of him [and by the first codicil] of his wife.

The executors commenced this action to obtain a construction of the will, in the following particulars:

1. Whether or not the scrip or new stock issued by the directors of the New York Central Railroad Company to the testator during his life, is not *surplus* within the true intent and meaning of said will, and as such belongs to Charles C.

Brundage v. Brundage.

2. Whether or not the plaintiffs are bound to give to Sarah S. a New York Central Railroad bond of $1,000.

3. Whether or not the codicils shall be considered a part of said will.

4. Whether or not the plaintiffs are bound to pay to the legatees any more than the number of shares of stock named in the will at $100 per share.

5. What part of the estate shall be considered surplus.

6. Whether at the decease of the widow, and the payment to Charles C. of $2,000, the residue of the property bequeathed to the widow shall be divided between the children Charles C. and Sarah S.

7. Whether Chester A. Collar is entitled to the farm, having failed to provide for the support of the testator and his wife.

The special term gave the following construction to the will. Opinion by Mr. Justice JAMES C. SMITH.

SMITH, J. This action is brought by the executors of the last will and testament of Nathan Brundage, deceased, to obtain a judicial construction of the will.

An executor cannot maintain an action for the construction of a will in respect to questions with which he has nothing to do. In the present case the executors have no interest in or power over the real estate, nor any duty connected therewith, and for that reason the questions raised in the complaint as to the devolution of the title to the real estate owned by the testator at the time of his death, cannot be disposed of in this action.

The only questions to be considered are those relating to the personal property. My conclusions respecting them are the following:

I. By the first clause of the will, the defendant Eliza Brundage, the widow of the testator, is entitled, during her life, to twenty shares of the capital stock of the New York Central Railroad Company, of the nominal or par value $100 each. She is not entitled, however, to the eighty per cent scrip certificates issued to the testator in his life-time, as the holder of those shares.

The certificates being the property of the testator at the time of his death, the widow has no claim to them unless they are given to her by the will.

They are not given by the will unless they pass, as mere incidents, by a bequest of the stock *eo nomine.* That they thus pass, I think cannot be maintained. Whatever force there may be in the views

advanced by the counsel for the defendants, as to the legal charac-
ter and effect of the certificates, and the power of the company to
apply future earnings to their payment, at the expense of the
holders of the original stock, those views do not justify the conclu-
sion that the certificates pass by a bequest of the stock.    It is true
the character of the certificates is somewhat anomalous.    They are
not capital stock, nor are they dividends, strictly speaking, either of
cash or stock.    They purport to represent past earnings of the com-
pany, which were· expended in the construction and equipment of
the road, and in the purchase of real estate and other property with
a view to the increase of the traffic of the company, and they are
issued to the stockholders as evidence of such expenditure and of
their right to re-imbursement of the same, at some convenient
future period.    Yet they create no obligation on the part of the
company to pay, even if the future earnings should be sufficient.
They are payable, with dividends, *at the pleasure* of the company, and
they are also convertible into capital stock at the option of the com-
pany, the legislature having authorized such conversion since the cer-
tificates were issued.    Although they are the increase of the original
stock, they are not inseparably connected with it; they may be sold
and transferred separately, without affecting their validity.    It was
competent for the testator to give the stock to one legatee, and the
scrip certificates to another, and, in my opinion, he has done so by
the provisions of his will, the certificates being disposed of by the
residuary clauses.

The consolidation certificates are on a different footing.    By the
terms of the will, the widow was entitled to a delivery of the stock
certificates at the expiration of thirty days after the death of the
testator.    The consolidation certificates were not issued, nor was
the consolidation affected till after that time.    She is, therefore, to
be regarded as the holder and owner of the stock bequeathed to her,
at the time of the consolidation and of the issuing of the consolida-
tion certificates, and is entitled to receive her proportionate share
of said certificates, as such shareholder.

The same observations apply to the sum of $518,310, retained
out of the assets of the New York Central Railroad Company, for
the purpose of equalization, on the consolidation of the two com-
panies.    If that sum, or any part of it, shall be paid over by the
railroad corporation to the stockholders during the life-time of Mrs.

Brundage, she will be entitled to receive her proportionate share thereof as such stockholder.

So long as the consolidation certificates and the reserved fund remain in their present condition, Mrs. Brundage is not entitled to her share of the same *absolutely*, but only to the use and income thereof during her life. If the terms of consolidation between the companies are correctly understood, the corporation formed by the consolidation has the option to pay over the amount of such certificates from its future earnings, *as earnings*, or to convert the amount of such certificates into capital stock, and to pay dividends thereon. *Earnings* paid over as such to Mrs. Brundage will belong to her absolutely. But as increased capital, will be hers for life only, and she will be required to preserve it for those entitled in remainder, using only the income thereof for herself. She is not entitled, absolutely, to her proportionate share of the consolidation certificates and the reserved fund of $518,310, so long as the corporation has the option of converting them into capital.

II. The defendant, Eliza Brundage, is also entitled for life, to $2,000 in cash; to the household furniture left by the testator; and to a horse and other chattels mentioned in the first clause, which latter articles, if not belonging to the estate, are to be purchased by the executors to meet the bequest.

III. The first clause also makes a final disposition, after the death of Eliza Brundage, of all the property bequeathed to her during her life, namely, $1,000 of the railroad stock, and $1,000 in cash, of the amount bequeathed to her, to the testator's son Charles C. Brundage, and the remainder of such property to the testator's heirs equally, of whom there are three, viz.: Charles, Mrs. Collar, and Sarah Sophia Brundage. The bequests in the fifth clause, to Charles, after the death of testator's wife, of $1,000 in Central Railroad stock and $1,000 in cash, are but repetitions of the like provisions in the first clause, and are not cumulative. By virtue of this bequest of $1,000 in stock of the Central Railroad Company, Charles will be entitled, on the death of Mrs. Brundage, to ten shares of such stock, or shares of the nominal or par value of $1,000 of the stock of the corporation formed by the consolidation, or in whatever form said stock shall then exist.

IV. The bequest in the fourth clause, to Sarah S. Brundage, of $1,000 in New York Central Railroad bonds, is not a specific but a general or demonstrative legacy, and does not fail, though the testa-

tor had no such bonds at the time of his death. It is equivalent to a bequest of $1,000 in money.

By the same clause, she has also a vested legacy of $1,000 in cash, payable at the death of Eliza Brundage, out of the general assets of the testator.

V. The bequest to Mrs. Collar, of "ten shares of stock in the New York Central Railroad, of $100 a share," after the death of Eliza Brundage, is general and not specific. It is the duty of the executors to provide for its payment at the death of Mrs. Brundage out of the general assets. The fact that the New York Central is consolidated with the Hudson River Railroad Company, does not work an ademption of the legacy, but the legatee will be entitled to the same number of shares in the New York Central and Hudson River Railroad Company, or to shares in that company of the same nominal or par value, in the aggregate, as in the case of the bequest to Charles.

VI. "The surplus" or remainder of the personal property of the testator, after paying and providing for all the legacies and bequests contained in the will, together with debts and expenses of executing the will and administering on the estate, is given to Charles C. Brundage.

The costs of this action, including the taxable costs and disbursements of the defendants, being in the nature of expenses of executing the will, are to be paid by the executors out of the residuary property.

Judgment to be entered accordingly.

By a stipulation between the parties Charles C. Brundage was made a party plaintiff in his individual right, and it is in that right his counsel insists he is entitled to a construction of the will, as to the validity of the bequest to Collar.

Judgment was entered in conformity to the conclusions of the court above stated.

*E. G. Lapham*, for plaintiffs.

*H. L. Comstock*, for defendants.

MULLIN, P. J. The special term was right in holding that the executors were not entitled to call for a construction of the will as to the validity of the devise of the farm to Collar. They have

nothing to do with the land. They have no estate in nor control over it.

Nor could the court give a construction to that clause on the application of Charles C. Brundage. It is charged in the complaint that Collar did not support the testator, but the allegation is denied in the answer, and there is no proof on the subject.

If Brundage desired to have the court pass upon that clause, it was his duty to make proof of the facts alleged in the complaint; failing to do that, the court could not make any other disposition of the question than it has done. The case states that the plaintiff offered to prove that Collar abandoned the premises, and failed to provide for testator, etc., and that defendants objected to this evidence and it was rejected. If, by the plaintiff was meant Charles C., I am not satisfied the learned judge was right in rejecting it. He obviously understood the offer to be made by the executors, and the mistake was not corrected, and it is too late to correct it now.

It was correctly held that the widow was not entitled to any share of or interest in eighty per cent scrip issued by the New York Central Railroad Company to the testator.

The certificate for the eighty per cent is dated the 24th March, 1869, and was issued in pursuance of a resolution of the directors of said company, passed 18th December, 1868. The testator died 22d June, 1869. At the time of his death, therefore, the scrip was a part of his personal estate, and no connection between the original stock and the scrip is shown to exist thereafter, or that any connection between them was intended by the testator.

They were separate and distinct obligations against the company, assuming that the scrip was valid, and its validity is not called in question in this action. *Currie* v. *White*, 37 How. 330.

Whatever dividends were made to the stockholders after the death of the testator, the widow was entitled to the extent of the shares of stock held by her, but not to any earned before and not paid until after his death. Redf. on Wills, 2d part, 469, 470, and notes; *Spear* v. *Hart*, 3 Rob. 420. This scrip passed to the son Charles as part of the surplus referred to in the last clause of the will. Although not entitled to share in the eighty per cent scrip, she was entitled to the dividends or income derived from the twenty-seven per cent scrip which was issued after the testator's death, and also to the

income from the consolidation scrip issued by the consolidated company.

A dividend earned, but not declared, belongs to the person owning the stock when the dividend is actually declared, and not to the owner of the stock before such declaration.

On the death of the widow $1,000 of the railroad stock bequeathed to her, passed to Charles C. Brundage, together with $1,000 of the cash given her by the will, and the residue of the property given to the widow was to descend to his heirs. Ten shares of the same stock is given by the third clause of the will to Mrs. Collar after the death of the widow.

$1,000 of the cash given to the widow is, by the fourth clause of the will, given to Sarah S. Brundage.

By the fifth clause of the will the residue of the property, the use of which was given to the widow for life, after paying the foregoing legacies, is given to Charles, and his daughters, Maria and Sophie, to be equally divided between them.

By the fourth clause, as modified by the first codicil, ten shares of New York Central stock, and $1,000 in bonds of the same company are given at the decease of the testator to his daughter Sarah S. If the testator was the owner of ten shares of this stock not bequeathed to some other of the objects of the testator's bounty, these ten shares are payable from such stock; but if not, it is the duty of the executors to purchase ten shares of $100 each and transfer them to her. If such stock cannot be procured, then Sarah is entitled to the market value in money of said stock, thirty days after the testator's death.

As the testator owned no bonds of the New York Central Railroad, the executors must either procure such bonds and deliver the same to Sarah, or pay her the market value thereof in money, thirty days after the death of the testator.

By the fifth clause Charles C. is entitled, at the death of the testator, to $1,000 in cash.

Charles is entitled, under the will, to but one sum of $1,000 in cash, and $1,000 in stock from the cash and stock bequeathed to the widow. The whole of that fund is disposed of by the clauses of the will preceding the fifth clause, and there is nothing in the will or in the proof to show that the testator intended to revoke or modify such clauses.

When the will was made the testator had not purchased the house

and lot, and he could not then have intended it should pass to Charles as part of the surplus referred to in the will. There is nothing in either of the codicils if they were made after the purchase of the house and lot indicating any change of purpose as to what was intended to pass as surplus.

The surplus contemplated was, it seems to me, that which should remain of the personal after paying the debts and the legacies specified in the will.

As the judgment in this case will not interfere with the right of Charles to insist hereafter that he is entitled to the house and lot by the will, it is better for all concerned that the question should be reserved for decision to another litigation.

Judgment affirmed, the costs of the executors to be paid out of the estate.