BRIGHT *v.* LORD ET AL.

CORPORATION.—*Sale of Stock.*—*Dividend.*—One who owns stock in a corporation at the time a dividend is declared owns the dividend also, and a sale of the stock afterwards will not carry the dividend with it, though it may not be paid or payable until after the sale ; and, therefore, a buyer of such stock was not entitled to a dividend declared while, under a provisional contract between him and the seller, it was optional for a certain period

with the buyer to purchase or refuse the stock, and before the purchase was completed, no reservation being made as to the dividends or earnings, though the time fixed for the payment of the dividend was after the date of the completion of the sale.

From the Marion Superior Court.

*J. E. McDonald, J. M. Butler, H. W. Harrington* and *H. Francisco,* for appellant.

*N. B. Taylor, F. Rand, E. Taylor, B. Harrison, C. C. Hines* and *W. H. H. Miller,* for appellees.

BIDDLE, C. J.—The facts averred in the appellant's complaint are as follows:

That on the 1st day of April, 1873, the appellant entered into a provisional contract with John M. Lord, John Lord, and Charles M. Lord, by which they agreed to sell to the appellant five hundred and twenty shares of the capital stock of the Indianapolis Rolling Mill Company, of fifty dollars each, for the sum of thirteen thousand dollars, at the option of the appellant, to be by him taken at any time on or before the 18th day of June, 1873, to be paid for on delivery; that before the expiration of said option, on the 14th day of June, 1873, the said Lords, for the consideration of one hundred dollars, to them paid by appellant, extended the time of said provisional contract for thirty days, within which time the appellant paid the Lords thirteen thousand dollars, and received the stock, which, on the 16th day of July, 1873, was duly transferred to him on the books of the Rolling Mill Company; that the appellant purchased the stock without the reservation of any dividends or earnings, and with all the benefits and interests that pertain to the same; that on the 3d of July, 1873, the board of directors of the Rolling Mill Company declared a dividend on the capital stock of the company of five per cent., to be paid on the 1st day of August ensuing, amounting, on the stock, etc., purchased by the appellant, to thirteen hundred dollars, which the appellant claims; that the company was about to

pay the said thirteen hundred dollars to the Lords, who also claimed the amount. Prayer to restrain the company from paying the thirteen hundred dollars to the Lords, to decree the amount to the appellant, and for general relief.

The Rolling Mill Company was served with process, but made default.

Interlocutory proceedings were had after complaint and before answer, but as no question is raised upon them, they are not stated.

The Lords answered by a general denial. The case was submitted to the court for trial, which resulted in a finding for the defendants. Motion for a new trial overruled. Exception. Appeal to the general term, where the judgment was affirmed, from which an appeal was taken to this court.

The only error assigned here is in affirming the judgment at the general term. The evidence is before us, and we think it fairly proves the allegations in the complaint.

Was the appellant entitled to the dividend declared while it was optional with him to purchase or refuse the stock, and before the purchase was completed? This is the sole question in the case.

Where a stockholder in a railroad assigned and transferred his stock after two years interest had accrued, which, by a resolution of the company was payable annually, and had been carried to the account of the stockholder, it was held that the interest did not pass by the assignment of the stock; the court stating the rule to be, that "the interest follows the principal, as an incident to it, so long as it remains an incident; but when it is separated and set apart from the principal by actual payment, or by being carried, when due, to the credit of the owner of the principal in his account with the debtor, and this in pursuance of a provision in the contract creating and defining the principal debt, it is so separated and disjoined from the principal as to cease to be an incident to, and does not follow it." *The City of Ohio* v. *The Cleveland, etc., R. R. Co.,* 6 Ohio St. 489. And in the case of *Jones* v. *The Terre Haute & Rich-*

*mond R. R. Co.,* 29 Barb. 353, it was held, that "where, by a resolution of the board of directors, a dividend is made to the persons then holding stock, without any discrimination, out of the surplus earnings of the corporation for a given period, payable at a future day, all who are stockholders on the books of the company, at the time the dividend is declared, are entitled to share therein." This case seems to us as being remarkably similar to the one before us. It has also been held that the purchaser of a share of stock in a corporation has the right to receive all future dividends, from whatever source the profits may arise, provided he remain a member of the corporation until a dividend is made. *March* v. *The Eastern R. R. Co.,* 43 N. H. 515.

The same rule was recently held in England. The testatrix was owner of certain shares in the South Australian Banking Company. On the 7th day of June, 1865, dividends were declared by the company, payable on the 15th of July, 1865, and on the 15th of January, 1866. On the 31st of December, the testatrix died, having made her will, devising the stock, in 1863.

The question arose as to whether the dividend due on the 15th of January, 1866, passed to the devisee, or belonged to her residuary estate.

Sir W. Page Wood, V. C., said: "As soon as the dividend was declared, although payment, for convenience of the company, was postponed until the following January, from that moment the testatrix became entitled to it, although she could not have then recovered it, and it would have passed to her legatee had she specifically bequeathed it." *De Gendre* v. *Kent,* 4 Equity Cases, 283.

In an American case, still later, it was held that a dividend belongs to the owner of the stock, at the time the dividend is actually declared, and that dividends made to the stockholders after the death of a testator belong to the widow who owns the stock, but if made before, although payable afterwards, they will pass by the devise. *Brundage* v. *Brundage,* 65 Barb. 397.

In support of this general principle, see, also, *In re Foote*, 22 Pick. 299; *Clapp* v. *Astor*, 2 Edwards Ch. 379; *Phelps* v. *Farmers and Mechanics Bank*, 26 Conn. 269; *Hyatt* v. *Allen*, 56 N. Y. 553.

From the authorities and upon principle, we think the rule may be deduced, that whoever owns the stock in a corporation at the time a dividend is declared owns the dividend also; and a sale of the stock afterwards will not carry the dividend with it, though it may not be paid, or payable, until after the sale. The same rule governs in the sale of bonds or other securities, where the interest is payable at stated periods, as upon coupon bonds; but when the interest is accruing from day to day, whatever is due on the bond or other security at the time it is sold, will pass with it. The reason of the distinction is, that when the interest accrues from day to day, it is divisible and payable at any time; but when the interest is payable at stated periods, no part of it is due until the period arrives; and in the earnings or profits of stocks, it is impossible to know what amount is due until the dividend is declared.

In the case before us, Bright did not become the owner of the stock until the 16th day of July, 1873. Up to that time, it was optional with him to purchase it or refuse it. The Lords would have had no remedy, if Bright had refused the stock, and Bright would have suffered no loss, except the consideration he had paid for the option, and incurred no liability, whatever. The dividend had been declared on the 3d day of July, 1873, and the amount fixed, by which it became the property of the Lords at that time, although not payable until the 1st day of August ensuing; and there is nothing in the complaint to inform us but what Bright knew all these facts at the time he completed the purchase of the stock. At least, ordinary business diligence would have informed him of the facts, if he did not actually know them, and then he could have purchased the stock, as it then stood, or not, at his option. As he has not averred in his complaint that he did not know these facts, and could not have ascertained

them by ordinary business diligence, he must be held to have known them, and to have made his purchase accordingly.

The judgment is affirmed.