DAVID DILL, AS EXECUTOR, &C., OF RACHEL J. MILLER, DECEASED, AND DAVID DILL, INDIVIDUALLY, RESPONDENT, v. MARY WISNER, APPELLANT, IMPLEADED WITH OTHERS.

*Devise of real estate charged with the payment of debts and legacies—by whom the same are to be enforced—the executor cannot maintain an action to do so.*

The plaintiff's testatrix, after making certain specific and pecuniary legacies, and bequeathing the residue of her personal property to a Mrs. Dill, devised her real estate to two persons named in the will, charged with the payment of all her just debts, funeral and testamentary expenses, and pecuniary legacies. One of the said devisees, acting, as he claimed, as executor, collected the rents of the real estate from the death of the testatrix, April 6, 1877, up to October 2, 1878, when, discovering that the debts exceeded the value of the farm, the devisees executed a deed renouncing and releasing

their interest in it. Thereafter this action was brought by the said exec-
utor for a construction of the will and to have the real estate sold to pay the
debts and legacies, which exceeded in amount both the real and personal
estate. It was not shown that the heir-at-law, who was the principal
creditor of the estate, had been informed of the renunciation of the devisees,
or had been asked or had refused to pay and discharge the debts and
legacies.

*Held*, that if the devisees accepted the devise they became personally liable
for the payment of all the debts and legacies charged upon it.

That if they refused to accept it, the land descended to the heir-at-law of the
testatrix, charged therewith, and that it was the right and duty of the
creditors and legatees, and not of the executors, to enforce such charges in
an appropriate action.

That this action could not be maintained.

APPEAL from a judgment in favor of the plaintiff, entered upon
the trial of this action by the court without a jury.

Rachel J. Miller, by her will, after making several specific lega-
cies of furniture and silver, and giving pecuniary legacies to the
amount of $2,400, gave the residue of the personal property to
Rachel H. B. Dill. She gave the real property to Matthew J.
Dill and David Dill, charged with the payment of all her just
debts, funeral and testamentary expenses, and pecuniary legacies.
She made David Dill and Lewis Wisner her executors, and she
died April 6, 1877, leaving the defendant, her only surviving sister
and heir-at-law. The will was proved, and letters thereon issued.

Lewis Wisner refused to qualify, and David Dill became sole
acting executor. The personal property inventoried $1,146.10 ; of
which $332.50 represented the value of the furniture, &c., specific-
ally bequeathed. The debts proved to be as follows : A claim of
the defendant, disputed by the executor, on which she recovered
judgment December 7, 1878, for $4,162.87. A claim of Fred. L.
Westbrook, also disputed, on which he recovered $585.35 ; a judg-
ment of Mary Bamon for $64.54, and medical attendance, $30.50.
David Dill collected the rents of the real estate the first year.
The next year he took possession of the farm, he says, as executor,
and worked it on shares with his brother, Matthew J. Dill, and he
was in possession until October, 1878. The farm is of the present
value of about $4,000. On October 2, 1878, when it was becom-
ing apparent that the debts exceeded the value of the farm, Mat-

thew J. Dill and the plaintiff executed a deed poll, renouncing all claim to the farm, and recorded the same.

On November 23, 1878, he commenced this action, making the legatees, pecuniary and specific, parties, setting forth the will, the debts, the renunciation of the farm by the devisees, alleging that he could not proceed without obtaining the judgment of the court, and asking the judgment and direction of the court on several questions there propounded. The action was brought to trial on the facts substantially set forth above. A decision was made, and judgment thereon granted, that the farm was primarily charged with the debts, funeral expenses and pecuniary legacies, and should be sold therefor by a referee ; that the personal estate was exonerated ; that, on the refusal of the devisees to accept the farm, there was imposed on the executor a trust to marshall the assets, convert them into cash and pay them to the parties entitled thereto ; that the mesne profits of the farm constituted a fund for the payment of debts and legacies ; and the referee was directed to. ascertain them, and the executor to collect the same ; that the referee was to pass the accounts of the executor and ascertain the liens and charges on the fund ; that if the moneys raised from the real estate were insufficient, the personal property should be sold and the proceeds applied.

On February 18, 1879, David Dill was cited on the application of a legatee to render an account before the surrogate, which proceeding is still pending. In his account he charged himself with the rent of the farm, and produce and crops raised on the farm and still on hand. He claimed to credit himself with certain legal expenses, to which the defendant objected.

*D. M. De Witt,* for the appellant. Neither the provisions of the will, nor the situation of the plaintiff as executor, warranted the commencement of a suit in equity for the construction of the will, or for instruction as to his duties. (*Bowers* v. *Smith,* 10 Paige, 193 ; *Onderdonk* v. *Mott,* 34 Barb., 106 ; *Walrath* v. *Hardy,* 24 How. Pr., 353 ; *Bailey* v. *Briggs,* 56 N. Y., 407, 413 ; *Chipman* v. *Montgomery,* 4 Hun, 739, 742 ; *Smith* v. *Rockefellow,* 3 Hun, 295 ; *O. & L. C. R. R. Co.* v. *Vt. & C. R. R. Co.,* 4

4 Id., 712, 714.) Under the will in question, the executor had no control over the real estate, had no duties with respect to the real estate, but the farm passed to the devisees (provided they accepted the devise) as fully exempt from all authority of the executor, as it would have descended to the heir-at-law in case of intestacy. (2 R. S., 82, § 6, subd. 7; *Kohler* v. *Knapp*, 1 Bradf., 241; *Fay* v. *Halloran*, 35 Barb., 295; *Payn* v. *Beal*, 4 Denio, 410; *Cleveland* v. *Whiton*, 31 Barb., 546. See also *Brevoort* v. *McJimsey*, 1 Edw. Ch., 551; *Wilcox* v. *Smith*, 26 Barb., 330, 337; *Griffith* v. *Beecher*, 10 Id., 432, 434; Redf. on Wills, Part II., p. 120; 1 R. S., m. p. 729, § 56; Redf. on Wills, Part II., p. 121; *Stearns* v. *Stearns*, 1 Pick., 157; *Tole* v. *Hardy*, 6 Cow., 333, 339.) The circumstance that the real estate is charged with the payment of debts and legacies does not devolve upon the executor any trust in the land, nor impose upon him any duties with respect thereto. (Willard on Executors, 314, 328; 2 R. S., 102, § 14; *Matter of Fox's Will*, 52 N. Y., 530, 536, 537; Redf. on Wills, Part II., pp. 220, 221; *Moller* v. *Griffiths*, 3 Paige, 402.) The renunciation of the devisees can make no difference in the duties of the executor. The land descends to the heir-at-law, as in the case of intestacy; and chargeable in equity with the payment of debts and legacies, when they would have been chargeable in the hands of the devisee. (4 Kent Comm., pp. 533, 534; *Birdsall* v. *Hewlett*, 1 Paige, 32; *Goddard* v. *Pomeroy*, 36 Barb., 546; *James* v. *James*, 4 Paige, 115; Willard Eq. Jur., 489.) The court erred in holding that the real estate is primarily liable for debts and legacies, and the personal estate exonerated therefrom. (*Walker* v. *Jackson*, 2 Atk., 624; *Hoes* v. *Van Hoesen*, 1 N. Y., 120, and cases cited; Willard on Executors, 393; Willard Eq. Jur., 564; *Greene* v. *Greene*, 4 Madd., 148 [82]; *Bootle* v. *Blundell*, 1 Meriv., 230; *Hawley* v. *James*, 5 Paige, 318, 448; 2 Williams on Executors, pp. 1541–1549, and 2 Jarman on Wills, pp. 565–587.)

*Winfield, Leeds & Morse*, for the respondent. Where the land is charged, and the whole personal estate is bequeathed specifically, and not as a residue, the personalty is exonerated. (*Youngs* v. *Youngs*, 45 N. Y., 254; *Larkin* v. *Mann*, 53 Barb., 267; *Sparks*

v. *Van Alstyne*, 18 Wend., 199; Story on Equity, § 574; *Walker* v. *Jackson*, 2 Atk., 624; *Bicknell* v. *Page*, 2 Id., 79.) The charge upon the land created a trust, and the refusal of the devisees to accept the devise will not defeat it nor exempt the land from the charge. The executor, whose duty it is to pay the debts, will be regarded in equity as a trustee, and the beneficiaries (as creditors and legatees) will be regarded as *cestuis que trust*. (*Benson* v. *Leroy*, 4 Johns. Ch., 651; *Bailey* v. *Ekin*, 7 Vesey, Jr., 323; Lewin on Trusts, 6 ed., 123, 627; 2 Washburn on Real Prop., 172; *Clark* v. *Crego*, 47 Barb., 599; 2 R. S., 730, § 68 [6 ed., vol. 2, 1110, § 81]; 2 R. S., 734, § 100 [6 ed., vol. 2, p. 1116, § 121]; *xp. Turner*, 9 Mod. 418; *Elliott* v. *Merryman*, Barn., 81; *S. C.*, 2 Atk., 41; Lewin on Trusts, 627.) The devisees were not bound to accept the devise, and had a legal right to refuse it. Nor were they bound to make an election in this respect, until they had knowledge of all the facts as to the amount of the liabilities of the testatrix, which they would have to assume if they took the devise. (*Gridley* v. *Gridley*, 24 N. Y., 130; 3 Washburn on Real Prop., 700; 2 Redfield on Wills, 304; *Wheeler* v. *Lester*, 1 Brad., 293; *Messenger* v. *Andrews*, 4 Russ., 478; *Chamberlain* v. *Chamberlain*, 1 Ch. Ca., 256; Roper on Legacies, 855; Story on Equity, § 1098.)

LEARNED, P. J.:

The charge upon the land did not create a trust, in any accurate meaning of the word. It imposed only a lien or incumbrance. (*Matter of Fox's Will*, 52 N. Y., 530.) We are cited to no case in this State holding the contrary. *Benson* v. *LeRoy* (4 Johns. Ch., 651) was the case of a devise to trustees, in trust to pay debts and distribute the residue. It was not the case of a mere charge on lands devised. *Clark* v. *Crego* (47 Barb., 599) decides nothing on the point. There is no trust expressly given to the executors; and it is not necessary to imply any.

It seems, this devise, if accepted, made the devisee personally liable to pay the liabilities charged thereon. (*Gridley* v. *Gridley*, 24 N. Y., 130. But see *Mesick* v. *New*, 7 N. Y., 163.) This shows that it was not a mere devise in trust to sell and pay debts

and legacies. On such a devise in trust the devisee would not be personally liable.

If the devisee did, in fact, refuse to accept the devise, then the estate descended to the heir, charged with the payment. (*Birdsall* v. *Hewlett*, 1 Paige, 32.) But, probably, there is no personal liability on the heir, upon whom the law casts the descent. No trust, in any case, exists in the executor or elsewhere.

The distinction between legal and equitable assets has become unimportant and almost meaningless here. Formerly, equitable assets were distributed in a different manner from that in which legal assets were distributed. They were those which the executor did not take, *as executor*. The plaintiff here sues as executor.

The plaintiff insists that, if no trust, there is a power in trust. But, none is given expressly, and there is no occasion to imply any. Such a power is implied when the executor is expressly directed to do some act, for the doing of which a power is necessary. (*Morton* v. *Morton*, 8 Barb., 18.) Here he is not directed to do anything touching the land or its avails. Even the power of the surrogate to authorize a sale of the land for debts is taken away, where there is a charge of the debts; until the creditors have exhausted their remedies under the charge. This indicates that the remedy is to be sought by the creditor himself, in an action to enforce the charge. (2 R. S., m. p. 102, § 14.)

The plaintiff stated on the trial that he entered on the land, as executor, and undertook its management, to save, for the payment of the debts, as large a sum as possible. As executor, he had no right to enter upon the land. He could enter thereon only as devisee. If we assume that, having collected the rents of the lessee, whose term did not expire till April, 1878, and having worked the farm till October, 1878, the devisees could then renounce the devise, still they are, or the plaintiff is, still holding the rent received and the crops taken off. With these the plaintiff has nothing to do. If the land has descended to the heir, she is entitled to the rent and the crops. There is nothing in the will which makes the income of the farm a fund to pay

debts or legacies. The creditors and legatees are no more entitled to the income than is a mortgagee.

There is no positive direction to sell the land, and, therefore, there is no so-called equitable conversion of the land into money. The heir certainly has, as the devisees had, the privilege of paying off the charges, without having any sale made of the land. It is only upon her refusal to pay off and discharge the charges on the land, that any person interested therein could complain. Now, it does not appear that she has ever refused such payment. It was only on October 2, 1878, that the devisees renounced, and this action was commenced November 23, 1878. The heir was herself by far the largest creditor, and the largest pecuniary legatee. And nothing appears showing that she had knowledge of the renunciation; or that she was not willing to discharge the claims of creditors and legatees.

Indeed, we are unable to see the necessity for this action. It is claimed that a marshalling of assets is needed; and a question is raised whether the charge is in aid, or in exoneration of the personal property. But, when this is considered practically, we see little occasion to examine it. It cannot be questioned in any event, that debts are to be paid before legacies; funeral expenses, &c., before either. Now the funeral expenses, proving the will, &c., amount to over $216. The debts, as claimed, are stated in the complaint to be over $6,755. They are proved to be over $4,911; besides interest. Thus, we have a total of $5,127, before legacies are reached. The land is estimated in the complaint at $5,000; and is proved to be worth from $3,800 to $4,000.

Therefore, there is not value enough in the land to pay the legacies, after first paying debts and funeral expenses, &c. The executor shows, on the trial, personal property amounting to $1,146.10, of which $332.50 is the value of specific legacies. The total pecuniary legacies are $2,400. Now, even assuming that the land is the primary fund to pay the debts, legacies or funeral expenses, it is shown to be insufficient for that purpose. And so great is the insufficiency that *all the personal estate*, as well as the land, will apparently be needed to pay the debts, pecuniary legacies, and funeral expenses, &c. And we suppose that it is not claimed that,

even if the land be the primary fund, the personalty is not the secondary.

In the will there are pecuniary legacies to the amount above stated, including one of $200 to Rachel Dill. She is also made the residuary legatee. We are inclined to the opinion that the charge was in aid, and not in exoneration, of the personalty. Because the will gives to Rachel Dill the residue of the personal property, after having specified numerous specific and pecuniary legacies; some to Rachel Dill herself. Now, if the testatrix had supposed that the personal property was not to pay any of the legacies, she would not have bequeathed it as a *residue*, after pecuniary legacies. (2 Jarman on Wills, 586; *Powell* v. *Riley*, Law Rep., 12 Eq., 175.) In *Youngs* v. *Youngs* (45 N. Y., 254), cited on this argument, certain real estate was charged, and if that proved insufficient then other real estate was charged; and then the residue of the real and personal was given.

The provisions of the will in that case were different from those of the will under consideration. But we deem it unnecessary, as above stated, to decide whether the charge is in aid, or in exoneration, of the personal property.

It seems to us that this action should not be sustained. (*Brundage* v. *Brundage*, 65 Barb., 397; *Chipman* v. *Montgomery*, 11 Sup'm. Ct., 739; *Smith* v. *Rockefeller*, 10 Id., 295.) We do not see that the executor had anything to do with the land. As to the personal property, he could account before the surrogate, as he has been doing. However the complaint may endeavor to conceal the fact, the action is really brought against Mrs. Wisner, the heir. And yet no allegations are made, or proof given, of any neglect, or refusal, on her part, to discharge the charges on the land. Whether she discharged them or not was a matter with which the plaintiff had nothing to do; unless as it might affect his accounting, and the distribution of the personal property before the surrogate. But all the circumstances show that no difficulty of that kind gave rise to the action. If Mrs. Wisner had recovered no judgment, the executor would have found the will to be simple in its meaning.

We think that the judgment should be reversed and the com-

plaint should be dismissed, with costs against the plaintiff personally.

Present—LEARNED, P. J., BOCKES and LANDON, JJ.

Judgment reversed and complaint dismissed, with costs.